# In the United States Court of Federal Claims

No. 19-1797C

(Filed:  June 17, 2020)

|  |  |  |
|---|---|---|
| | ) | |
| **MOSHE AVRAM PERRY,** | ) | RCFC 12(b)(1); RCFC 12(b)(6); Tucker |
| | ) | Act claims; illegal exaction claims; |
| *Plaintiff,* | ) | money-mandating claims; takings |
| | ) | claims; implied-in-law contract claims; |
| **v.** | ) | patent claims, 28 U.S.C. § 1498(a); |
| | ) | 35 U.S.C. § 122(a); RCFC 41(b); |
| **THE UNITED STATES,** | ) | frivolous complaint and filings, |
| | ) | 28 U.S.C. § 1915(e)(2)(B)(i). |
| *Defendant.* | ) | |
| | ) | |

*Moshe A. Perry*, West Hills, CA, *pro se.*

*Igor Hellman*, United States Department of Justice, Civil Division, Washington, DC, for defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

### OPINION AND ORDER

**SOLOMSON, Judge.**

On November 20, 2019, Plaintiff, Mr. Moshe Avram Perry, filed a Complaint ("Compl.") in this Court, initiating the above-captioned action against Defendant, the United States.  Although Mr. Perry's voluminous 95-page Complaint is often quite difficult to follow, its thrust is that he is entitled to relief from this Court for actions taken by the United States Patent and Trademark Office ("USPTO") stemming from its examinations and subsequent denials of three patent applications that Mr. Perry allegedly submitted to the USPTO.[1]

---

[1] The applications Mr. Perry identifies are:  No. 14/794,807, No. 15/382,598, and No. 15/709,307. *See* Compl. ¶ 1.  A search of the USPTO's patent application database shows that application No. 15/382,598 purports to "address[ ] waste of liquids in all sorts of bottles/containers made from plastic, glass, metals [sic] bottles, containers, dispensers, caps which use pumping action to expel all sorts of liquids."  *See* U.S. Patent Application No. 15/382,598, Publication

For the reasons explained below, the Court grants the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  To the extent any of Mr. Perry's claims fall within this Court's jurisdiction, he fails to allege sufficient facts — as opposed to conclusory legal assertions — which state a claim upon which relief can be granted.

## I.      Mr. Perry's Complaint

In summary, Mr. Perry alleges that:  (1) the USPTO "unlawfully denied [him an] impartial examination of the Expired Applications in accordance with the Patent Act and USPTO rules and procedures" (Compl. ¶ 302); (2) the USPTO "violated [his] constitutional rights to due process and to just compensation for a taking of his property" — referencing his various patent applications (Compl. ¶ 303); (3) "the USPTO's actions in abandoning Mr. Perry's Applications were undertaken in bad faith" (Compl. ¶ 305); (4) he is "entitled to specific relief: issuing a patent in Application No.[]14/794,807;  and fair examinations of applications 15/382,598, and No. []15/709,307" (Compl. ¶ 306); (5) in "preventing any of Mr. Perry's patent applications from issues [sic] as patents, the USPTO took Mr. Perry's property rights by publishing a non-publish application No. []15/382,598" and that he "is therefore entitled to just compensation for the USPTO's taking of his property" (Compl. ¶¶ 311-312); (6) the USPTO's "actions violate [Mr. Perry's] rights under the Patent Act, PTO regulations, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment to the United States Constitution" (Compl. ¶ 318) for which he is "entitled to orders setting aside these agency actions" (Compl. ¶¶ 320, 332); and (7) he is entitled "to a writ of mandamus compelling Defendants . . . to conduct a fair, impartial, and timely examination of his applications" (Compl. ¶¶ 335-339).

Mr. Perry further asserts a claim based upon various fees the USPTO allegedly collected from him "for examination-related activities."  Compl. ¶ 326.  In that regard, he alleges that:  (1) "[t]he USPTO, acting in bad faith and in violation of Mr. Perry's constitutional and statutory rights under the Patent Act and APA, required Mr. Perry to pay numerous fees" (Compl. ¶ 325); and (2) "[t]he USPTO's assessment, acceptance, and retention of [patent application] fees was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and also contrary to constitutional right, power, privilege, or immunity, and was inequitable" (Compl. ¶ 327).[2]  Mr. Perry further maintains that he "is therefore entitled to specific relief" and requests that this

---

No. 20180235408 (published Aug 23, 2018) (Moshe Avram Perry, applicant), *available at* http://appft.uspto.gov/netahtml/PTO/search-bool.html (last visited, Apr. 28, 2020).  The Court could not locate the other putative applications in the database.  Regardless, neither the subject matter nor the precise contents of Mr. Perry's patent applications are relevant to the Court's resolution of the government's pending motion to dismiss.

[2] The reference to the APA is to the Administrative Procedure Act.  *See* Compl. ¶ 318.

Court instruct the USPTO to "apply the fees to the patent applications and apply the overage of the fees to the fees the USPTO claimed are owed."  Compl. ¶ 328.

Based on the foregoing allegations and claims, Mr. Perry seeks a variety of (mostly duplicative) relief, including:  (1) "specific relief, in the form of granting the three patents"; (2) an "award of just compensation for [the] taking of Mr. Perry's property"; (3) a "finding that USPTO improperly and inequitably accepted and retained Mr. Perry's fees for applications other than the abandoned applications"; (4) an "order setting aside the USPTO's actions adopting unlawful policies for the treatment of Mr. Perry's applications"; (5) a "writ of mandamus compelling [the USPTO] expeditiously to conduct a fair, impartial, and timely examination of his three applications";  and (6) a "finding that the USPTO improperly accepted and [retained] Mr. Perry's fees for the abandoned [a]pplications."  Complaint ¶ 354.

In addition to claiming money damages under the Tucker Act and pursuant to the Takings Clause of the Fifth Amendment of the U.S. Constitution — types of claims over which this Court *does* possess jurisdiction, at least *generally* — Mr. Perry also seeks relief quite clearly outside of this Court's power to grant, including:  (1) compensation pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); (2) declaratory and injunctive relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*;  and (3) remedies pursuant to other civil and criminal statutes. Compl. ¶¶ 1, 60, 114, 304, 353.

On February 3, 2020, the government filed a motion to dismiss all of the non-takings claims alleged in Mr. Perry's Complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, and the takings claim pursuant to RCFC 12(b)(6) for failure to state a claim.  ECF No. 11 ("Def. Mot.").  On March 9, 2020, Mr. Perry filed his response to the government's motion to dismiss ("Pl. Resp.").[3]  On March 26, 2020, the government filed its reply brief.  ECF No. 19 ("Def. Rep.").

For the reasons explained below, the government's motion hereby is **GRANTED,** and Mr. Perry's Complaint is **DISMISSED**.

---

[3] On March 6, 2020, Mr. Perry sought to file both his response to the motion to dismiss and an "Application for a Preliminary and/or Permanent Injunction and Issue a Restraining Order Against USPTO," both of which the Court permitted to be filed, despite the Clerk of the Court's having identified filing defects.  *See* ECF Nos. 15-17.  For purposes of this opinion, the Court treats Mr. Perry's request for injunctive relief as part of his response to the government's motion to dismiss.  Mr. Perry's other attempted filings either were rejected or hereby are rejected for failing to comply with this Court's rules (and because the filings are generally duplicative of each other).  This decision thus resolves the government's pending motion and Mr. Perry's motion for injunctive relief, and renders moot any of his subsequent, attempted filings.

## II.      The Jurisdiction Of The U.S. Court Of Federal Claims

This Court has a duty to ensure that it has jurisdiction over any claim presented. *See, e.g.*, *St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019); *see* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As a threshold matter, the United States cannot be sued absent its consent in the form of a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, "except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction in the Court of [Federal] Claims more than in any other court to entertain suits against the United States.'" *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *United States v. Herwood*, 312 U.S. 584, 587-588 (1941)). Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). In pertinent part, the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

Thus, the Tucker Act vests this Court with jurisdiction and waives the sovereign immunity of the United States "[f]or actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions[.]" *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (defining three types of Tucker Act Claims). The Tucker Act, however, "does not create a substantive cause of action[.]" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). With respect to "money-mandating" claims, in particular, a statute — or other provision of law — creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 217 (quoting *Testan*, 424 U.S. at 400) (internal quotation marks omitted); *see also Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

Courts treat a *pro se* plaintiff's pleadings with less scrutiny and give them a more liberal construction than pleadings prepared by counsel. *See Castro v. United States*, 540 U.S. 375, 381 (2003). "[E]ven *pro se* plaintiffs," however, "must persuade the court that [its] jurisdictional requirements have been met[.]" *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) *(*citing *Bernard v. United States*, 59 Fed. Cl. 497, 499 (2004), *aff'd*, 98 F. App'x 860 (Fed. Cir. 2004)). Mr. Perry has not persuaded this Court that it possesses jurisdiction to entertain his claims. In the alternative, Mr. Perry has failed to state a claim as a matter of law upon which relief can be granted.

## III.   The Distinction Between RCFC 12(b)(1) And RCFC 12(b)(6) For Tucker Act Claims

The question of when a claim should be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1) — as opposed to for failure to state a claim pursuant to RCFC 12(b)(6) — has engendered no small amount of confusion within this Circuit and among litigants.[4] The Tucker Act's language itself may be to blame. In a single sentence, the Tucker Act appears to link inextricably the jurisdictional and merits inquiries by vesting this Court with "***jurisdiction*** to render judgment upon" particular "***claim[s]*** against the United States." 28 U.S.C. § 1491(a)(1) (emphasis added). With limited exceptions, the Tucker Act generally authorizes this Court only to decide particular monetary claims against the United States: "actions pursuant to contracts . . ., actions to recover illegal exactions of money . . ., and actions brought pursuant to money-mandating" sources of law — *i.e.*, the "claim[s]" over which this Court possesses jurisdiction. *Roth*, 378 F.3d at 1384. The Court thus readily understands why, in any given instance, the government might challenge — or why this Court might dismiss — a complaint pursuant to either RCFC 12(b)(1) or 12(b)(6).[5]

---

[4] *See, e.g.*, *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("Courts frequently confuse or conflate the distinction between subject matter jurisdiction and the essential elements of a claim for relief.").

[5] *See Fisher*, 402 F.3d at 1171–72 ("Separating the question of a federal court's subject matter jurisdiction over a cause from the question of what a plaintiff must prove in order to prevail in the cause is, in many areas of the law, not a difficult matter: a specific statute sets the court's jurisdictional parameters; a separate statute or regulation or common law rule establishes the right that allegedly has been breached. In Tucker Act jurisprudence, however, this neat division between jurisdiction and merits has not proved to be so neat. In these cases, involving suits against the United States for money damages, the question of the court's jurisdictional grant blends with the merits of the claim. This mixture has been a source of confusion for litigants and a struggle for courts."); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed. Cir. 1992) ("Confusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction.").

The Federal Circuit, for its part, valiantly has tried to clarify the law, but confusion persists.[6]  Notwithstanding any suggestion to the contrary,[7] there are important implications that flow from dismissing a complaint for lack of jurisdiction as opposed to for failure to state a claim:  the latter is considered "on the merits" and "usually carries res judicata effect, whereas a dismissal for lack of jurisdiction typically does not."  *Engage Learning*, 660 F.3d at 1355.  For this reason alone, there is a strong incentive for litigants and the Court to understand the distinction and to get the decision right, although that is easier said than done.  Another important difference between these two grounds for dismissal — and as relevant in this case — resides in how the Court must analyze a complaint when resolving a motion to dismiss.  But, to fully understand this distinction, the Court must first recognize two categories of jurisdictional attacks that a defendant in any court may assert:  facial and factual.

A facial jurisdictional attack "challenges whether the court's subject-matter jurisdiction was properly pleaded."  Steven S. Gensler & Lumen N. Mulligan, 1 *Federal Rules of Civil Procedure, Rules and Commentary, Rule 12* (Feb. 2020 Update) [hereinafter *Federal Rules & Commentary*]; *see also Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018) (addressing "facial challenge").  A facial attack itself can take two forms.  A defendant either can "assert that the plaintiff has failed to plead jurisdiction as required by Rule 8(a)(1)" or "assert that, while properly pleaded per Rule 8(a)(1), the allegations—even when assumed to be true—fail to establish jurisdiction under the relevant statute or constitutional provision."  *Federal Rules & Commentary*.  Regarding facial attacks, the Federal Circuit has explained:

> [W]e join the majority of our sister circuits in holding that the Supreme Court's "plausibility" requirement for facial challenges to claims under Rule 12(b)(6), as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167

---

[6] *Spruill*, 978 F.2d at 688 & n.11 (comparing cases and concluding that "[l]anguage in cases decided in this court has not always been consistent with the basic principle[s] . . ., or with the language of other Federal Circuit cases").

[7] In some cases, the Federal Circuit has observed that the distinction between RCFC 12(b)(1) and RCFC 12(b)(6) dismissals is meaningful, while in other instances the Federal Circuit has treated any such error as harmless.  *Compare Engage Learning*, 660 F.3d at 1355 ("Mastering the distinction between a dismissal for lack of jurisdiction and a dismissal on the merits 'is not merely an intellectual exercise without practical utility.'" (quoting *Do–Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 640 (Fed. Cir. 1989)), *with Brodowy v. United States*, 482 F.3d 1370, 1376 (Fed. Cir. 2007) ("Because the distinction between the two forms of dismissal has no apparent practical effect *in this case*, however, we need not remand for purposes of correcting the judgment in that respect." (emphasis added) (citing *Lewis v. United States*, 70 F.3d 597, 603–04 (Fed. Cir. 1995), *Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006), and *Moden v. United States*, 404 F.3d 1335, 1340–41 (Fed. Cir. 2005)).

> L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129
> S. Ct. 1937, 173 L.Ed.2d 868 (2009), also applies to facial
> challenges to subject-matter jurisdiction under Rule 12(b)(1).

*Crow Creek Sioux Tribe*, 900 F.3d at 1354–55. Thus, "[t]hreadbare recitals of [claim] elements . . ., supported by mere conclusory statements, do not suffice" to confer jurisdiction. *Id.* (quoting *Iqbal*, 556 U.S. at 678).

A factual attack, on the other hand, "challenges the truth of the jurisdictional facts alleged in the complaint." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Once the government lodges a factual attack against a complaint that purports to invoke the Court's subject-matter jurisdiction, the burden shifts to the plaintiff to "establish[] subject-matter jurisdiction by a preponderance of the evidence." *Id.* at 748. The Court "may consider relevant evidence in order to resolve the factual dispute[,]" but must afford the plaintiff an "opportunity to be heard before dismissal is ordered[.]" *Id.* at 747-48.

None of these distinctions or burden-shifting procedures shed light, however, on a fundamental question: when should the Court dismiss an apparently deficient complaint pursuant to RCFC 12(b)(1) on jurisdictional grounds, instead of pursuant to RCFC 12(b)(6) for failure to "state a claim upon which relief can be granted"? Applying the Federal Circuit's guidance to answer that question — particularly in the context of a lengthy, confusing complaint — is not a self-executing, mechanical task. Accordingly, this Court first sketches out the basic principles with respect to each Tucker Act claim type, before turning to apply them in resolving the government's pending motion to dismiss. *Roth*, 378 F.3d at 1384.

## A.   Contract Claims

The Federal Circuit has "held that jurisdiction under [the Tucker Act] requires no more than a *non-frivolous* allegation of a contract with the government." *Engage Learning,* 660 F.3d at 1353 (emphasis added) (citing *Lewis*, 70 F.3d at 602, 604, and *Gould, Inc. v. United States*, 67 F.3d 925, 929–30 (Fed. Cir. 1995)). In *Gould,* the contractor alleged the existence of both an express and an implied-in-fact contract with the United States. 67 F.3d at 929–30. The government argued that the Court lacked jurisdiction because the plaintiff's allegation of illegality voided the express contract and a United States Supreme Court decision barred recovery on an alleged implied-in-fact contract. *Id.* The Federal Circuit held that "the proper basis for such a dismissal, if it is in fact warranted, is failure to state a claim upon which relief can be granted" given the nonfrivolous allegations of a contract. *Id.* at 929 ("there is no question that [plaintiff's] complaint alleges the existence of an express contract").

In *Lewis,* the Federal Circuit explained the test used to determine whether a plaintiff's complaint states a nonfrivolous allegation:

> [A] complaint alleging that the plaintiff has a right to relief on a ground as to which the court has jurisdiction raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint does not "appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction."

70 F.3d at 603 (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913), *overruled on other grounds by Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)). The Federal Circuit further explained:

> To be sure, the Supreme Court has stated that there may be instances in which a claim that is otherwise within the court's jurisdiction is so insubstantial on its merits that a dismissal may be termed jurisdictional. In this century, however, the Court's references to that exception to the general rule have often been unenthusiastic, and it may be that the exception is best viewed as a vestige of nineteenth-century practice that has no continuing vitality in the age of modern pleading.

*Id.* (citing cases, including *Montana–Dakota Util. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951)). Accordingly, the Federal Circuit noted that "such jurisdictional dismissals for frivolousness must be 'confin[ed]' to cases 'that are very plain.'" *Id.* at 603-04 (quoting *Hart v. B.F. Keith Vaudeville Exch.*, 262 U.S. 271, 274 (1923)).

Thus, "the question of whether a contract exists" generally appears *not* to be "a jurisdictional one," unless, however, a plaintiff does "not plausibly allege the existence of a contract." *Engage Learning*, 660 F.3d at 1355. In that regard, this Court lacks jurisdiction where a plaintiff's allegations are "immaterial and made solely for the purpose of obtaining jurisdiction." *Lewis,* 70 F.3d at 603-04 (internal quotation omitted); *see Ibrahim v. United States*, 799 F. App'x 865, 867 (Fed. Cir. 2020) ("A non-frivolous allegation that a contract exists between a plaintiff and the United States is sufficient to invoke the subject matter jurisdiction of the Claims Court, but dismissal may be proper for lack of subject matter jurisdiction if the claim is wholly insubstantial and frivolous." (quoting *Lewis*, 70 F.3d at 602–04 (internal quotes omitted)).

## B.    Money-Mandating Claims

For a money-mandating claim, "all that is required is a determination that the claim is founded upon a money-mandating source [of law] and the plaintiff has made a

nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). In *Jan's Helicopter*, the Federal Circuit explained that the jurisdictional pleading requirement "is satisfied when a plaintiff makes 'a non-frivolous assertion that [plaintiffs] are entitled to relief under the statute.'" *Id.* at 1307 n.8 (citing *Brodowy*, 482 F.3d at 1375); *Brodowy*, 482 F.3d at 1375 ("Where plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case.").

Senior Judge Bruggink helpfully summarized the proper inquiry, as follows: "[i]f a statute or regulation does mandate the payment of money, it is sufficient to trigger jurisdiction if plaintiff [also] shows that 'he is within the class of plaintiffs entitled to recover under the money-mandating source.'" *Monzo v. United States*, 2013 WL 6235608, at *3 (Fed. Cl. Nov. 27, 2013) (quoting *Jan's Helicopter*, 525 F.3d at 1307; *see Brodowy*, 482 F.3d at 1375.[8] But, "[t]he question of whether the claimant *actually* 'falls within the terms of the statute' or regulation is a merits issue." *Monzo*, 2013 WL 6235608, at *3 (emphasis added) (quoting *Greenlee County v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007) (internal quotation marks omitted)).

Regarding takings claims, in particular, "[i]t is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction." *Jan's Helicopter*, 525 F.3d at 1309 (citing *Moden,* 404 F.3d at 1341). Thus, where a plaintiff "[1] allege[s] a taking [2] of their property [3] by the government" and is "within the class of plaintiffs entitled to recovery if a takings claim is established," the Court of Federal Claims has subject-matter jurisdiction over the plaintiff's complaint. 525 F.3d at 1309. On the other hand, a complaint that "fails to mention the Takings Clause or the Fifth Amendment at all" or that "fails to allege facts sufficient to establish responsibility of the United States for [the] acts" or that is founded upon the premise "'that the United States has taken unlawful action'" is insufficient to invoke this Court's jurisdiction. *Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (quoting *Moody v. United States*, 931 F.3d 1136, 1142 (Fed. Cir. 2019)).

### C.   Illegal Exaction Claims

With regard to illegal exactions, the Court cannot perceive any reason to depart from the general rule that a plaintiff's complaint must contain nonfrivolous *factual* allegations that the plaintiff is entitled to recover money for the government's

---

[8] *See also Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1361 (Fed. Cir. 2002) (affirming Court of Federal Claims decision dismissing case for lack of jurisdiction where "the regulations [at issue] are not money-mandating as to [plaintiff]").

purported improper action.  *See Harris v. United States*, 2014 WL 10936253, at *1 (Fed. Cl. Apr. 16, 2014) (dismissing illegal exaction claim for lack of subject-matter jurisdiction based on a finding that "there [was] no nonfrivolous illegal exaction claim in this suit"); *cf. Reid v. United States*, 2020 WL 2764753, at *19 (Fed. Cl. May 8, 2020) (denying motion to dismiss illegal exaction claim based on alleged illegal actions of the Federal Housing Finance Agency ("FHFA"), and finding that plaintiffs' allegations "that the FHFA is unconstitutionally structured" and that it "violat[ed] . . . its own regulations" are "sufficient to establish . . . an illegal-exaction claim").

\*   \*   \*   \*

In sum, the Court reiterates that, in reviewing a plaintiff's complaint, our jurisdictional determination is not governed by the plaintiff's characterization of its claims and "[t]hreadbare recitals of [claim] elements . . ., supported by mere conclusory statements" or frivolous allegations, do not suffice.  *Crow Creek Sioux Tribe*, 900 F.3d at 1354–55.  As Justice Holmes wrote:  "if the plaintiff really makes a **substantial** claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad."  *Kohler Die Co.*, 228 U.S. at 25 (emphasis added).  Where a claim fails to clear even this low bar, the Court has no jurisdiction to decide the claim's merits.

The inescapable reality, however, is that there is no scientific bright line dividing the question of jurisdiction from that of a failure to state a claim.  Indeed, if there is such a line, it is at the subatomic level and there is no judicial electron microscope up to the task of rendering that line visible to the naked eye.  *Carter v. Homeward Residential, Inc.*, 794 F.3d 806, 808 (7th Cir. 2015) ("[T]here is a sliding scale of substantiality, and at some point on the scale a claim is actionable.  No one has explained how that point is to be determined.  It remains indeterminate, a source of needless uncertainty.").  That the dividing line is indeterminate, however, does not relieve this Court from its duty to make such a judgment — a call at the plate — regarding whether a plaintiff has pleaded sufficient facts to invoke Tucker Act jurisdiction or whether the complaint "should be dismissed by the [trial] court on the merits[.]"  *Id.* at 809.

How frivolous — or how dependent on bare, conclusory legal assertions — must a complaint be, in order to justify a dismissal for lack of jurisdiction?  The Seventh Circuit has provided a useful metaphor to answer that question:

> We once gave the example of a hypothetical dispute over bananas described by the parties as "securities" so that they could litigate their dispute in the federal courts under federal securities law.  Congress would not have wanted the federal courts to waste their time with such a case, and the courts therefore have an independent duty to refuse to entertain it.

- 10 -

*Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) (internal citation omitted) (discussing *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988)).

Returning to this Court's jurisdiction, the bottom line is that a plaintiff cannot simply dress up a claim in Tucker Act clothes and vest this Court with jurisdiction.  Just as a plaintiff cannot invoke federal jurisdiction by asserting that bananas are securities, so too a plaintiff cannot magically transform torts into government contracts or otherwise recite a Tucker Act incantation to create jurisdiction where it does not exist. *Iqbal*, 556 U.S. at 679 (allegations that are "no more than conclusions, are not entitled to the assumption of truth"); *Twombly*, 550 U.S. at 555 (complaint must contain more than mere statements providing "labels and conclusions" or "a formulaic recitation of the elements of [jurisdiction]"); *Crow Creek Sioux Tribe*, 900 F.3d at 1354–55 ("'To survive a motion to dismiss . . . a complaint must contain sufficient factual matter' that would plausibly establish . . . [jurisdiction, and] "'[t]hreadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)); *Clark v. United States*, 2014 WL 3728172, at *4 (Fed. Cl. 2014) ("[A]llegations of federal government involvement which fail the standards of *Twombly* and *Iqbal* must be dismissed under RCFC 12(b)(1)."), *aff'd*, 632 F. App'x 1027 (Fed. Cir. 2015); *Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) (court cannot "prioritize a complaint's use of magic words over its factual allegations").

Nevertheless, "[t]he presumption . . . is that the dismissal of even a very weak case should be on the merits rather than because it was too weak even to engage . . . jurisdiction." *Carr*, 591 F.3d at 917.  Indeed, the Federal Circuit directs that we err on the side of a merits dismissal pursuant to RCFC 12(b)(6).  *Lewis*, 70 F.3d at 603 ("[A] complaint alleging that the plaintiff has a right to relief on a ground as to which the court has jurisdiction raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint does not 'appear[ ] to be *immaterial and made solely* for the purpose of obtaining jurisdiction.'" (quoting *Kohler Die & Specialty Co.*, 228 U.S. at 25) (emphasis added)).  Indeed, if that were not the case, "in light of the rule that a jurisdictional dismissal is not *res judicata* as to the underlying merits of the dispute, . . . the 'frivolousness' exception gives rise to the anomaly that if frivolous claims are dismissed for want of jurisdiction, rather than on the merits, the principles of *res judicata* will be least applicable to the most insubstantial claims." *Lewis*, 70 F.3d at 603 (citing *Do–Well Machine Shop*, 870 F.2d at 640).

**IV.     Mr. Perry's Claims Are Not Within This Court's Jurisdiction Or Must Be Dismissed For Failure To State A Claim As A Matter Of Law Upon Which Relief Can Be Granted**

Taking into consideration Mr. Perry's *pro se* status by broadly construing his arguments — and, of course, assuming that all of his plausible *factual* allegations are true, as the Court must at this stage[9] — this Court nevertheless holds that Mr. Perry's claims either fall outside of this Court's jurisdiction or fail to state a claim upon which relief can be granted.  In either case, Mr. Perry's claims must be dismissed.

Before addressing the government's arguments in its motion to dismiss, the Court notes that Mr. Perry repeatedly has failed to comply with this Court's Rules in a number of important respects.  For example, pursuant to RCFC 10(a), "the United States [must be] designated as the party defendant."  This means not only that the United States must be included as a party defendant, but also that it must be the *sole* defendant named in the complaint.  *Kemp v. United States*, 124 Fed. Cl. 387, 392-93 (2015) ("The *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual." (emphasis added)).  In Mr. Perry's Complaint, and in all of his subsequent filings, Mr. Perry included an exhaustive list of other government agencies and officials who are not proper defendants in this Court, including, but not limited to, the USPTO and "All Other Defendants in their Administrative and Official Capacities."  Compl. at 1; *see also* Pl. Resp. at 1.  Furthermore, Mr. Perry submitted nine additional attempted filings that this Court did not request, and that were either duplicative of one another or did not comply with this Court's Rules regarding the form or timing of filings.  *See* ECF No. 22 (April 24, 2020 Order "Rejecting Plaintiff's 4/20/2020 and 4/22/2020 Nine Submissions").

Failure to follow this Court's Rules may, in some instances, independently warrant dismissal of an action, although the Court does not rely upon such grounds here.  *See* RCFC 41(b) (providing for *sua sponte* dismissal "[i]f the plaintiff fails . . . to comply with these rules"); *Whiting v. United States*, 99 Fed. Cl. 13, 17 (2011) (citing *Kadin Corp. v. United States*, 782 F.2d 175, 176–77 (Fed. Cir. 1986), for the proposition that although "dismissal of a claim is a harsh action, especially to a *pro se* litigant, it is justified when a party fails to pursue litigation diligently and disregards the court's rules").  While Mr. Perry's procedural missteps may constitute a simple misunderstanding of how this Court operates, more likely — as explained *infra* — they

---

[9] Because the government's motion makes a facial attack on the jurisdictional facts contained in Mr. Perry's Complaint, this decision assumes that such allegations — but not legal conclusions — are true for the purposes of resolving the pending motion to dismiss.  *Iqbal*, 556 U.S. at 678 ("[F]or the purposes of a motion to dismiss we must take all of the *factual* allegations in the complaint as true." (emphasis added)).

underscore Mr. Perry's mistaken view of this Court's jurisdiction, or what is required to state a proper claim in this Court pursuant to the Tucker Act.

At base, Mr. Perry fails to meet his burden to assert non-frivolous, factual allegations in his Complaint sufficient to invoke this Court's jurisdiction. Mr. Perry's use of Tucker Act language often is nothing more than a pretext for an attempt to invoke this Court's jurisdiction over claims that otherwise would be clearly outside of it. *Lewis*, 70 F.3d at 603 (emphasizing that "a complaint['s] . . . asserted basis of jurisdiction . . . [can]not [be merely] pretextual"). Moreover, at a minimum, Mr. Perry's Complaint fails, as a matter of law, to state a claim upon which relief can be granted. Accordingly, whether pursuant to RCFC 12(b)(1) or 12(b)(6), Mr. Perry's Complaint must be dismissed.

### A. Mr. Perry's Complaint Does Not Assert Any Patent-Related Claim Within This Court's Jurisdiction

Mr. Perry's Complaint is based primarily upon three patent applications that he allegedly submitted to the USPTO. Compl. ¶ 1. The Court of Federal Claims typically possesses jurisdiction over patent-related claims *only* where the patent holder alleges that its patent was "used or manufactured by or for the United States without license of the owner thereof[.]" 28 U.S.C. § 1498(a). That statute applies, however, only to patent infringement claims against the government, rather than embracing any and all patent-related claims based on the government's actions. *See, e.g., Zoltek Corp. v. United States*, 815 F.3d 1302, 1304 (Fed. Cir. 2016) (recognizing that § 1498(a) limits the "liability of the United States for infringement" to a narrow set of circumstances); *Honeywell Int'l Inc. v. United States*, 114 Fed. Cl. 637, 638 (2014) (explaining the narrow scope of the exclusive grant of jurisdiction under § 1498(a)). Patent claims fall within § 1498's ambit only where infringement is alleged to have been undertaken "by or for the Government with its authorization and consent." *Zoltek Corp*, 815 F.3d at 1304. In this case, Mr. Perry does not allege facts that support a patent claim within this Court's jurisdiction.

To invoke this Court's patent jurisdiction, a plaintiff must be a "patentee," which "'has been interpreted to require that a suit for infringement must ordinarily be brought by a party holding legal title to the patent[.]'" *Mynette Tech. v. United States*, 139 Fed. Cl. 336, 343 (2018) (quoting *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998)). In this case, Mr. Perry's Complaint, at its core, alleges that his patent applications were improperly denied or otherwise mishandled. *See, e.g.*, Compl. ¶¶ 111-120, 121-126. Put differently, Mr. Perry does not allege that he is "a party holding legal title to the patent," *Mynette Tech.*, 139 Fed. Cl. at 343, as apparently his patent applications were never granted. *See Chinsammy v. United States*, 95 Fed. Cl. 21, 24 (2010) (emphasizing that 28 U.S.C. § 1498(a) "covers 'a patent' not a patent application"), *aff'd*, 417 F. App'x 950 (Fed. Cir. 2011). If Mr. Perry seeks to appeal or otherwise challenge the denial of his patent applications, his remedy lies elsewhere. *See* 35 U.S.C. §§ 134(a) (appeals to the Patent Trial and Appeal Board ("PTAB")), 141 (PTAB

appeals to the Federal Circuit), 145 (civil action in the United States District Court for the Eastern District of Virginia); *see also Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 367 (2019) (discussing 35 U.S.C. § 145).  Accordingly, Mr. Perry's allegations and claims regarding the USPTO's handling or review of his patent applications — regardless of their merits — are beyond our Court's subject-matter jurisdiction.

Mr. Perry's other claims — based on the USPTO's alleged mishandling of his patent applications — similarly fall outside this Court's jurisdiction.  For example, this Court does not have jurisdiction over FTCA claims, just as this Court lacks jurisdiction to adjudicate claims "sounding in tort" generally.  28 U.S.C. § 1491(a)(1); *see Rohland v. United States*, 136 Fed. Cl. 55, 65 (2018) (citing *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1365–66 (Fed. Cir. 2013)).[10]  Nor do Mr. Perry's other asserted statutory bases for his patent-related claims — including the APA — fall within this Court's jurisdiction. *See, e.g., Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) ("[T]he Court of Federal Claims lacks APA jurisdiction . . . ."); *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993).  Mr. Perry does not rely upon an alleged money-mandating statute or "point to some statute specifically conferring power upon the trial court to grant his desired relief[.]" *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002); *Adair v. United States*, 497 F.3d 1244, 1250 (Fed. Cir. 2007) ("When the source of such alleged right is a statute, it can only support jurisdiction if it qualifies, as most statutes do not, as money-mandating.").

Mr. Perry further appears to maintain that the Tucker Act itself somehow *directly* authorizes suit in this Court to contest the USPTO's actions.  *See, e.g.*, Pl. Resp. ¶¶ 21-24. None of Mr. Perry's factual assertions, however, amount to a claim within this Court's Tucker Act jurisdiction, and, as noted *supra*, this Court has no jurisdiction to generally review an agency's actions (*e.g.*, pursuant to the APA).  *Lion Raisins Inc. v. United States*, 416 F.3d 1356, 1370 n. 11 (Fed. Cir. 2005) ("Of course, no APA review is available in the Court of Federal Claims.").

This Court also lacks jurisdiction to entertain Mr. Perry's requests for declaratory judgment and mandamus relief.  *See Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 987 (Fed. Cir. 2017) ("[The] Court of Federal Claims does not have jurisdiction . . . over . . . claims seeking declaratory, injunctive, and mandamus relief[.]"); *Dewakuku v. Martinez*, 271 F.3d 1031, 1038 (Fed. Cir. 2001) (noting that in *United States v. King*, 395 U.S. 1, 5 (1969), the U.S. Supreme Court "refus[ed] to find Declaratory Judgment Act jurisdiction at

---

[10] Contrary to Mr. Perry's argument, Pl. Resp. ¶¶ 34-37, the Court of Federal Claims does not have jurisdiction over tort actions based on its jurisdiction in vaccine injury cases.  The National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq.*, *expressly* provides for this Court's jurisdiction in such cases.  42 U.S.C. § 300aa-12 ("Court jurisdiction").  Here, as the government correctly observes, "Mr. Perry identifies no similar jurisdictional provision that would allow this Court to hear his tort claims[.]"  Def. Rep. at 3.  Mr. Perry does not allege a vaccine injury claim.

Court of Claims 'absen[t] an express grant of jurisdiction from Congress'"); *Bundrick v. United States*, 785 F.2d 1009, 1010 (Fed. Cir. 1986) ("mandamus [is an] action[] over which the Claims Court does not have jurisdiction"). Similarly, any claims rooted in the USPTO's alleged violation of criminal laws must be dismissed, as the "'function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to [the Court of Federal Claims.]'" *Sanders v. United States*, 252 F.3d 1329, 1335 (Fed. Cir. 2001) (quoting *Kania v. United States*, 650 F.2d 264, 268 (Cl. Ct. 1981)).

### B. Mr. Perry's Complaint Fails Either To State A Contract Claim Within This Court's Jurisdiction Or To State A Claim As A Matter Of Law Upon Which Relief Can Be Granted

The government, in its reply brief, generously reads one of Mr. Perry's claims as an attempt to allege breach of contract — a type of claim that at least generally *is* within this Court's Tucker Act jurisdiction. *See* Def. Rep. at 3-4. That said, the "[d]etermination of [this Court's] jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Moreover, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998). Thus, as explained *supra*, Mr. Perry cannot invoke this Court's jurisdiction to adjudicate his grievances merely by invoking Tucker Act language, such as "contract," "taking," "damages," or "illegal exaction." This Court is not bound by Mr. Perry's conclusory legal characterizations, and references in his Complaint to an "express or implied contract with the United States[,]" Compl. ¶ 21, are insufficient — standing alone — to vest this Court with jurisdiction.

Nevertheless, Mr. Perry appears to contend that his submission of patent application data sheets to the USPTO formed "an agreement between the patent applicant and the USPTO, and [that the] fees . . . paid [were] consideration." Pl. Resp. ¶ 122. The Court cannot discern whether Mr. Perry asserts that he formed an express or an implied-in-fact contract with the United States. In either case, this Court concludes that Mr. Perry's alleged submission of patent applications to the USPTO does not constitute a contract claim within this Court's jurisdiction.[11] Indeed, Mr. Perry's use of

---

[11] Although Mr. Perry's contract claim is articulated at greater length in his response to the government's motion to dismiss, such filings cannot supplement the Complaint to establish jurisdiction. *Mendez-Cardenas v. United States*, 88 Fed. Cl. 162, 166–67 (2009) (quoting *Car Carriers, Inc. v. Ford Motor Corp.*, 745 F.2d 1101, 1107 (7th Cir. 1984), for the proposition that "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'" to establish jurisdiction); *McGrath v. United States*, 85 Fed. Cl. 769, 772 (2009) ("This court does not possess jurisdiction to hear claims presented for the first time in responsive briefing."). This Court consistently has reaffirmed this principle, as have other courts. *See e.g.*, *Davis v. United States*, 108 Fed. Cl. 331, 338 n.4 (2012); *Kortlander v. United States*, 107 Fed. Cl. 357, 374 (2012); *Hufford v. United States*, 87 Fed. Cl. 696, 701 (2009); *Michels v. United States*, 72 Fed.

contract language is pretextual, and he cannot manufacture jurisdiction here through the use of such terms. *Lewis*, 70 F.3d at 603.

The government thus is correct that Mr. Perry's contract claim must be dismissed for lack of jurisdiction. Def. Rep. at 4. Binding precedent "repeatedly [has] held that [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims [based] on contracts implied in law." *Hercules v. United States*, 516 U.S. 417, 423 (1996); *see Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) ("Implied-in-fact contracts, which are within the jurisdiction of the Court of Federal Claims, differ significantly from implied-in-law contracts[] which . . . are outside the [Court's] jurisdiction[]" (citing *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998))). Accordingly, in pleading contract claims against the government, only those predicated upon express or implied-in-fact contracts fall within this Court's subject-matter jurisdiction. *See, e.g.*, *eVideo Owners v. United States*, 126 Fed. Cl. 95, 104 (2016) (dismissing complaint pursuant to RCFC 12(b)(1) because plaintiffs merely "point[ed] to a duty that arises by operation of law to establish the alleged contracts with the United States[,]" rather than "an implied-in-fact contract that would fall within the [Court's] jurisdiction"), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017).

For example, in *Lion Raisins, Inc. v. United States*, the plaintiff alleged that the Department of Agriculture breached an implied-in-fact contract, in failing to perform statutorily required inspection services for which the plaintiff had paid. 54 Fed. Cl. 427, 432 (2002). This Court held that it lacked subject-matter jurisdiction because any such obligations "would be implied in law, not implied-in-fact[.]" *Id.* In particular, the Court reasoned that "the requirement for inspections and the payment of fees were pursuant to law and not the result of (1) an offer, (2) acceptance, (3) consideration, and (4) an agreement with a Government agent authorized to bind the Government." *Id.* at 431 (internal quotation marks omitted); *see Russell Corp. v. United States*, 537 F.2d 474, 482 (Ct. Cl. 1976) ("Implied-in-fact contracts differ from contracts implied in law (quasi-contracts), where a duty is imposed by operation of law without regard to the intent of the parties. Such arrangements are treated as contracts for the purposes of remedy only. This court, of course, has no jurisdiction to render judgment against the United States based upon a contract implied in law.").

Similarly, in *eVideo Owners* — a case upon which the government relies, and which involved allegations similar to those contained in Mr. Perry's Complaint — the plaintiffs claimed that they entered into implied-in-fact contracts with the USPTO

---

Cl. 426, 432 (2006); *Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 (8th Cir. 2015); *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009); *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). Mr. Perry's putative contract claim was presented, if anywhere, "for the first time in responsive briefing[.]" *McGrath*, 85 Fed. Cl. at 772. Thus, even if Mr. Perry sufficiently pleaded a contract claim in his opposition to the government's motion — which the Court concludes that he did not — the Court would not have jurisdiction to consider that claim.

through paying patent application fees, and that the USPTO's subsequent actions violated those contracts.  126 Fed. Cl. at 104.  This Court dismissed the breach of contract claim for lack of subject-matter jurisdiction because plaintiffs "point[ed] to a duty that arises by operation of law to establish the alleged contracts with the United States[.]"  *Id.*  Such a duty, however, "cannot create an implied-in-fact contract that would fall within the [Court's] jurisdiction."  *Id.* (citing *Lion Raisins*, 54 Fed. Cl. at 432).[12] In this case, the Court agrees with the government that "Mr. Perry cannot conve[r]t this statutory obligation into a contract simply by re-characterizing the fees that he paid to the USPTO as consideration."  Def. Rep. at 4.

The fatal defect in Mr. Perry's Complaint is that it does not allege facts that even *suggest* the existence of an express or implied-in-fact contract.[13]  Again, what Mr. Perry cannot do is label his submission of USPTO data sheets an implied-in-fact contract to confer jurisdiction here, nor is the Court bound by Mr. Perry's conclusory legal characterizations.  *See eVideo Owners*, 126 Fed. Cl. at 104; *Lion Raisins*, 54 Fed. Cl. at 432; *see also Bradley*, 136 F.3d at 1322.  Accordingly, Mr. Perry's claims stemming from the submission of his USPTO application are not supported by non-conclusory *factual* assertions sufficient to state a claim for breach of an express or implied-in-fact contract that falls within this Court's subject-matter jurisdiction.

---

[12] The basic rule is that "[t]he use of language that simply restates obligations created by a regulation evinces that the government 'never intended the language . . . to be more than a mere expression of intention, as opposed to words of commitment.'"  *Chattler v. United States*, 632 F.3d 1324, 1331 (Fed. Cir. 2011) (quoting *Floyd v. United States*, 26 Cl. Ct. 889, 891 (1992), *aff'd on other grounds,* 996 F.2d 1237 (Fed. Cir. 1993), *cert. denied,* 510 U.S. 925  (1993)).  Thus, "'[w]here rights and obligations are prescribed by statute and regulations rather than determined through the mechanics of a bilateral exchange, there is no contract in the usual sense of that word.'"  *Chattler*, 632 F.3d at 1331 (quoting *Clawson v. United States*, 24 Cl. Ct. 366, 370 (1991)).

[13] An implied-in-fact contract theory is sufficient "to set forth a basis for subject-matter jurisdiction" where a plaintiff makes "a non-frivolous assertion of [such] an implied contract with the United States[.]"  *City of Cincinnati*, 153 F.3d at 1377.  Notably, "the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs.  An implied-in-fact contract is one founded upon a meeting of minds and 'is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'"  *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (quoting *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)).  Thus, to demonstrate that an express or implied-in-fact contract with the government was formed, at the very least, the parties' conduct must allow for the inference that there was "(1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon."  *First Mortg. Corp. v. United States*, 142 Fed. Cl. 164, 170 (2019) (citing *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012)).  Although those elements implicate the merits of a claim, they are informative regarding the *facts* Mr. Perry's Complaint must plead to state a claim within this Court's jurisdiction.

Furthermore, any attempt to construe the relationship between the USPTO and a patent applicant as contractual is legally implausible on its face. *See Constant v. United States*, 861 F.2d 728, 1988 WL 94630, at *1 (Fed. Cir. Sep. 13, 1988) (unpublished) (emphasizing that "the issuance of a patent by the [USPTO] does not create a contractual relationship between the PTO and the patentee[,]"and the "patenting process is not a contracting process"); *Arunachalam v. Pazuniak*, 2018 WL 4603265, at *5 (D. Del. Sept. 25, 2018) (holding that patent holder did "not have a contract with the USPTO"); *see also Ibrahim*, 799 F. App'x at 867 (affirming dismissal for lack of subject-matter jurisdiction where plaintiff did not "plausibly allege the existence of a contract"). Indeed, even with respect to the patent process itself, the Federal Circuit has held that, "[f]ar from being the inception of vested patent rights, submission of a patent application is the inception of an uncertain process that might possibly result in vested rights at some later time." *Grover v. United States*, 73 F. App'x 401, 405 (Fed. Cir. 2003).

Accordingly, the Court holds that Mr. Perry's Complaint, at best, alleges an implied-in-law contract. *See Folden v. United States*, 56 Fed. Cl. 43, 55 (2003) (agreeing with the government that "'[t]he FCC's simple receipt of plaintiffs' license applications did not create contracts'" and that "the FCC regulations, upon which the plaintiffs base their contract claim, do not indicate an intent upon the part of the FCC to be contractually bound"), *aff'd*, 379 F.3d 1344 (Fed. Cir. 2004); *Baker v. United States*, 50 Fed. Cl. 483, 495 (2001) (observing that although federal regulations which govern Farm Services Agency applications "cast [such applications] in more mandatory terms" they nonetheless "lack definiteness and a manifestation of the Government's intent to enter into a contract upon receipt of an application").[14] But, as explained *supra*, a cause of action predicated upon such a contract does not fall within this Court's jurisdiction. *See Engage Learning*, 660 F.3d at 1353 (holding that "jurisdiction under [the Tucker Act] requires" that plaintiff plead sufficient facts to establish the existence of a contract with the government); *see also Crow Creek Sioux Tribe*, 900 F.3d at 1354–55 (emphasizing that "'[t]hreadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice'" to establish jurisdiction (quoting *Iqbal*, 556 U.S. at 678)).[15] To employ the

---

[14] To the extent Mr. Perry advances a contract theory in this case, it is limited to his patent applications. The Court cannot discern any other *facts* that plausibly could be read to allege a contract claim under the Tucker Act. Mr. Perry's repeated references to the language of the Tucker Act, *see, e.g.*, Compl. ¶ 21, are merely "pretextual" and do not suffice to establish this Court's subject-matter jurisdiction. *Lewis*, 70 F.3d at 603.

[15] This issue again implicates the difficulty in drawing a sharp distinction between dismissals pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). While this Court lacks jurisdiction over factual allegations that amount to nothing more than an implied-in-law contract, a contract that is found to be void as a matter of law properly may be dismissed for failure to state a claim. For example, in *Gould*, the Federal Circuit found that plaintiff alleged an express contact within this Court's jurisdiction, but that plaintiff's allegation of illegality voided the express contract. 67 F.3d at 929-30. But where, as here, allegations cannot possibly amount to an implied-in-fact contract within our jurisdiction, dismissal pursuant to RCFC 12(b)(1) is warranted.

Seventh Circuit's metaphor, Mr. Perry's alleged data sheets and patent applications are no more contracts than bananas are securities. *Carr*, 591 F.3d at 917.

In the alternative, the Court holds that Mr. Perry's contentions rooted in the existence of a contract with the United States, whether based on his USPTO applications or otherwise, fail to state a claim as a matter of law upon which relief can be granted. *See eVideo Owners*, 126 Fed. Cl. at 104 n.4 (holding that in addition to the Court's dismissing plaintiffs' implied-in-law contract claim pursuant to RCFC 12(b)(1), "the Court must also dismiss plaintiffs' breach of contract claims for failure to state a claim pursuant to RCFC 12(b)(6)[]"). For a complaint to survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain plausible factual assertions which, if true, would entitle the plaintiff to the claimed relief as a matter of law. *See Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002), for the proposition that "'[a] motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy[]'"). In other words, "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Thus, "[t]o state a claim upon which relief can be granted, [plaintiff] must allege either an express or an implied-in-fact contract, and the breach of that contract." *Trauma Serv. Grp.*, 104 F.3d at 1325.

Put differently, pursuant to RCFC 12(b)(6), a plaintiff must plead facts demonstrating *all* of the elements of a contract with the government — namely, "a mutual intent to contract, including an offer, an acceptance, and consideration" exchanged with a government official having actual authority to contract. *Id.* at 1326; *see Monarch Assur. P.L.C. v. United States*, 244 F.3d 1356, 1360 (Fed. Cir. 2001) ("[T]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so.").

Neither Mr. Perry's Complaint, nor his response in opposition to the government's motion — were the Court to consider new allegations in the latter — assert any facts sufficient to demonstrate that Mr. Perry and the United States had a mutual intent to contract, that the parties exchanged any offer and acceptance, or that there was any government official with actual authority who bound the United States in contract to Mr. Perry. Again, Mr. Perry's Complaint, at most, states a claim for the breach of an implied-in-law contract; but, as explained *supra*, that is a claim over which this Court does not have jurisdiction. *See Trauma Serv. Grp.*, 104 F.3d at 1328 (where plaintiff's complaint alleged only an implied-in-law contract and did not "show the existence of an express or an implied-in-fact contract, and the breach thereof, the Court of Federal Claims properly dismissed for failure to state a claim under RCFC 12(b)[(6)]"); *XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 793 (2015).

Where, as here, Mr. Perry has alleged nothing more than an implied-in-law contract with the United States — and has failed to allege any facts to support an express or implied-in-fact contract with the government — his Complaint fails to "elevate a claim for relief to the realm of plausibility" as required by RCFC 12(b)(6). *Laguna Hermosa*, 671 F.3d at 1288. Accordingly, even assuming this Court had jurisdiction to consider Mr. Perry's purported contract claims — whether based upon his submission of USPTO applications, or otherwise — the Court holds that such claims should be dismissed on the merits pursuant to RCFC 12(b)(6).

### C. Mr. Perry's Complaint Does Not Assert A Takings Claim Within This Court's Jurisdiction Or Fails To State Such A Claim As A Matter Of Law Upon Which Relief Can Be Granted

Although the government seeks dismissal of Mr. Perry's alleged takings claim pursuant to RCFC 12(b)(6), *see* Def. Mot. at 1, the Court questions whether his Complaint, while lengthy, contains sufficient non-conclusory, *factual* allegations so as to vest this Court with jurisdiction.[16] *Monzo*, 2013 WL 6235608, at *3 (holding that even if a complaint alleges the violation "a statute or regulation [which] does mandate the payment of money[,]" in order "to trigger jurisdiction . . . plaintiff [must] show[] that he is within the class of plaintiffs entitled to recover under the money-mandating source") (quotations and citation omitted); *see Crow Creek Sioux Tribe*, 900 F.3d at 1354–55.

To be clear, once again, Mr. Perry cannot invoke this Court's jurisdiction to decide his grievances merely via repetitive references to the Fifth Amendment or the magic word "taking." *See Barksdale v. United States*, 582 F. App'x 890, 892 (Fed. Cir. 2014) (per curiam) ("Despite the use of the word 'taking,' these are claims under the First and Fourteenth Amendment, which the Claims Court properly ruled [were] outside its jurisdiction."). Admittedly, however, Mr. Perry's putative takings claim presents a closer call as to whether Mr. Perry's Complaint should be dismissed on RCFC 12(b)(1) grounds or pursuant to RCFC 12(b)(6) for the simple reason that this Court *generally does* possess jurisdiction over takings claims pursuant to the Tucker Act.

The thrust of Mr. Perry's Complaint appears to be that, in general, "applications for patents shall be kept in confidence by the Patent and Trademark Office[,]" but that Mr. Perry's was not. 35 U.S.C. § 122(a); *see also Hyatt v. U.S. Patent & Trademark Office*,

---

[16] *See* RCFC 12(h)(3). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see Ibrahim*, 799 F. App'x at 867 ("Establishing subject matter jurisdiction is a threshold issue, *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010), and every federal court has an 'independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.' *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006).").

797 F.3d 1374, 1380 (Fed. Cir. 2015) ("The structure of § 122(a) reflects Congress' intent to protect the confidentiality of patent applications."); Compl. ¶¶ 45-58.  Even assuming that the USPTO did not comply with that statutory provision, such an alleged violation does not constitute a taking within this Court's jurisdiction.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  While "[i]t is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction," *Jan's Helicopter,* 525 F.3d at 1309, a plaintiff seeking compensation for a taking "must concede the validity of the government action which is the basis of the . . . claim."  *Mahoney v. United States*, 129 Fed. Cl. 589, 593 (2016) (quoting *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993)); *see also Moody*, 931 F.3d at 1142 ("A takings claim cannot be found on the theory that the United States has taken unlawful action."); *Gahagan v. United States*, 72 Fed. Cl. 157, 161-62 (2006) (citing *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986), for the proposition that a plaintiff's insistence that the government's alleged taking was "unlawful . . . places the claim outside a takings context"); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330 (Fed. Cir. 2006) (explaining that a "takings claim" pursuant to the Tucker Act is "separate from a challenge to the lawfulness of the government's conduct").  Indeed, Mr. Perry himself acknowledges this fundamental proposition of law.  *See* Compl. ¶ 26.

Nevertheless, Mr. Perry maintains — as reflected in the countless papers that he has sought to file throughout the pendency of his Complaint — that the USPTO acted in violation of 35 U.S.C. § 122 when the USPTO published his patent application on its website.  *See* Pl. Resp. at 49 (claiming that the USPTO "seized Mr. Perry's patent application, without permission"); *see also id.* ¶ 46 (characterizing the USPTO's actions as the "impermissible posting and sale of Mr. Perry's . . . patent application").  Because Mr. Perry is challenging the lawfulness of the government's action, and he does not "concede the validity of the government action," Mr. Perry's alleged takings claim is one which falls outside of this Court's jurisdiction and therefore must be dismissed. *Tabb Lakes*, 10 F.3d at 802; *Milgrom v. United States*, 651 F. App'x 1001, 1005 (Fed. Cir. 2016) (explaining that, "[w]hile the Claims Court does possess jurisdiction to consider certain takings claims under the Fifth Amendment, it may only exercise that jurisdiction when the claimant 'concede[s] the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act'" (quoting *Tabb Lakes*, 10 F.3d at 802–03)); *Whiteford v. United States*, -- Fed. Cl. --, 2020 WL 1845314, at *6 n.3 (Fed. Cl. Apr. 10, 2020) (dismissing takings claims based upon unlawful agency action for lack of subject-matter jurisdiction); *see Straw v. United States*, 2017 WL 6045984 (Fed. Cl. Dec. 6, 2017) (citing *Milgrom* with approval).

This requirement that a plaintiff seeking to allege a takings claim before this Court "concede the validity of the government action which is the basis of the . . . claim[,]" *Mahoney*, 129 Fed. Cl. at 593, also necessarily implies that any alleged

impropriety in the USPTO's conduct cannot *itself* be the basis for Mr. Perry's takings claim. *Hyatt*, 797 F.3d at 1383 (holding that APA applies to court's review of whether USPTO properly "disclos[ed] . . . otherwise-confidential information").[17]

Moreover, neither Mr. Perry's factual averments with respect to the USPTO's alleged violation of 35 U.S.C. § 122(a), nor any other contentions in his Complaint, appear to satisfy the requirements to support a takings claim within this Court's subject-matter jurisdiction. For example, Mr. Perry's allegations do not identify what property right, if any, was taken by the government or how the USPTO indeed has "taken" any such property. *See, e.g.*, *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019) (observing that a takings claim under the Tucker Act lies when "the government takes [plaintiff's] property without paying for it"). Indeed, in the most basic sense of the word, a "taking" for which plaintiff seeks compensation before this Court could not have possibly occurred if none of plaintiff's property was, in fact, "taken." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1215 (Fed. Cir. 2005) ("As an initial matter, a claimant seeking compensation from the government for an alleged taking of private property must, at a minimum, assert that its property interest was *actually taken* by the government action." (emphasis added)).

In this case, Mr. Perry's allegations center around one of the patent applications he submitted to the USPTO. Compl. ¶¶ 308-312. Yet, at no point does Mr. Perry's Complaint "suggest that [the USPTO] has claimed a permanent or even temporary ownership interest" in his patent application — or otherwise took his intellectual property — for the government's benefit. *Drury v. United States*, 52 Fed. Cl. 402, 404 (2002); *see Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1356 (Fed. Cir. 2003) (noting that "an invasion must appropriate a benefit to the government at the expense of the property owner"); *Big Oak Farms, Inc. v. United States*, 105 Fed. Cl. 48, 58 (2012) (rejecting takings claim in the absence of "an appropriation of property for the government's benefit"). Even allegations that the United States infringed a patent that *already* has been granted — claims which *are* within this Court's subject-matter jurisdiction — cannot be pleaded as takings claims. *Golden v. United States*, 955 F.3d 981, 987-88 (Fed. Cir. 2020) (citing *Schillinger v. United States*, 155 U.S. 163, 168-69 (1894), for the

---

[17] Notwithstanding Mr. Perry's use of takings language, his Complaint also appears to suggest that the USPTO's publication of Mr. Perry's patent application provides a basis for relief separate and apart from his takings claim. In particular, he asserts that the government injured him in "[u]nlawfully [p]ublishing [a]nd [t]aking [w]ith [r]espect [t]o [a]pplication No. []15/382,598[.]" Compl. at 87 (¶¶ 308-312). But even if this claim were valid, Mr. Perry's remedy lies elsewhere. *See, e.g.*, *Diamond v. U.S. Agency for International Dev.*, 108 F.3d 312, 315 (Fed. Cir. 1997) (noting that "[w]hile an argument could be made" that plaintiff's claims had merit, the "remedy, if any, lies in the district court"); *cf. St. Bernard Parrish*, 887 F.3d at 1362 (observing that even if the government's inactions were improper the "remedy for these inactions, if any, lies in tort[,]" and thus is outside the Court of Federal Claims' jurisdiction).

longstanding proposition that even patent infringement "claims sound in tort" and, thus, "are to be pursued exclusively under 28 U.S.C. § 1498" and not as takings claims).

While "[t]he multipurpose nature of [a] complaint d[oes] not deprive the Court of Federal Claims of jurisdiction to entertain the takings claim alleged therein[,]" *El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1353–54 (Fed. Cir. 2004), the Court must still "'look to the true nature of the action'" to determine whether jurisdiction exists. *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997) (quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)); *see Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006) ("Regardless of a party's characterization of its claim, we look to the true nature of the action in determining the existence or not of jurisdiction.").

When looking to the true nature of Mr. Perry's Complaint, the mere fact that he uses the word "taking" is insufficient to support a claim within this Court's jurisdiction. *Barksdale*, 582 F. App'x at 892 (affirming dismissal of takings claim because plaintiff's "use of the word 'taking,'" did not establish the Claims Court's jurisdiction). Instead, Mr. Perry must allege *facts* that support the existence of a compensable property interest that may serve as the basis for a takings claim within this Court's jurisdiction. *See Vane Minerals (US), LLC v. United States*, 116 Fed. Cl. 48, 62 (2014) ("The absence of a compensable property interest has been recognized as grounds for dismissal under RCFC 12(b)(1)[.]"); *Hafen v. United States*, 30 Fed. Cl. 470, 474 (1994) (dismissing takings claim premised on unpatented mining claims for lack of subject-matter jurisdiction, because "plaintiff ha[d] no valid existing right" in the claims), *aff'd*, 47 F.3d 1183 (Fed. Cir. 1995); *Seaboard Lumber Co. v. United States*, 19 Cl. Ct. 310, 319 (1990) (citing *Aulston v. United States*, 823 F.2d 510 (Fed. Cir. 1987), and *Freese v. United States*, 221 Ct. Cl. 963, 964–65 (1979), for the proposition that "[t]his court is without jurisdiction to determine whether a taking has occurred until the plaintiff establishes a legally recognized property interest in the timber[]").

Because Mr. Perry has failed to allege *any* facts to support a takings claim within this Court's subject-matter jurisdiction — aside from the conclusory references to a taking and unidentified property rights — his claim likely fails to satisfy the *Twombly* and *Iqbal* standards for the purposes of RCFC 12(b)(1). *Crow Creek Sioux Tribe*, 900 F.3d at 1354–55 (citing *Twombly*, 550 U.S. at 570 and quoting *Iqbal*, 556 U.S. at 678, for the proposition that "threadbare recitals of the elements of [a claim], supported by mere conclusory statements, do not suffice" to establish jurisdiction); *see Moden*, 404 F.3d at 1341 (emphasizing that dismissal for lack of subject-matter jurisdiction is appropriate where the allegations contained in the complaint are "foreclosed by prior decisions"). In sum, to the extent that Mr. Perry challenges the USPTO's conduct as unlawful, that claim belongs in district court; and, insofar as he seeks damages for alleged injuries arising from the USPTO's actions, such a claim sounds in tort. In either case, this Court likely lacks jurisdiction to consider the claim that the USPTO improperly published Mr. Perry's patent application. *See Golden*, 955 F.3d at 987-88.

Even if this Court has jurisdiction over Mr. Perry's takings claim, however, the government is correct that his claim nevertheless must be dismissed pursuant to RCFC 12(b)(6). *Indian Harbor Ins. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013) ("A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy."). Specifically, to state a takings claim upon which relief can be granted, a plaintiff "must demonstrate . . . a property interest to assert and that the government physically or by regulation infringed on that interest[.]" *Craig Patty & Craig Thomas Expeditors, LLC v. United States*, 136 Fed. Cl. 211, 214 (2018). Mr. Perry's Complaint does not identify a recognized property interest or demonstrate that the government somehow interfered with the use of his property, intellectual or otherwise. *Craig Patty & Craig Thomas Expeditors*, 136 Fed. Cl. at 214; *see Golden*, 955 F.3d at 987-88 (citing *Schillinger*, 155 U.S. at 168-69, for the proposition that patent infringement "claims sound in tort" when not based upon 28 U.S.C. § 1498 and are not takings claims); *Drury*, 52 Fed. Cl. at 404 ("None of [plaintiff's tort-based] allegations rise[] to the magnitude necessary to support a takings claim."); *cf. Big Oak Farms*, 105 Fed. Cl. at 58 (rejecting takings claim in the absence of "an appropriation of property for the government's benefit"). Instead, in support of Mr. Perry's claim that the USPTO's publication of his patent applications amounted to a taking, his Complaint simply recites "[c]onclusory allegations of law and unwarranted inferences of fact" — but, such assertions "do not suffice to support [his] claim." *Bradley*, 136 F.3d 1322.

Simply put, Mr. Perry's Complaint does not contain any plausible factual allegations which, even if true, demonstrate that the government somehow interfered with the use of his property, intellectual or otherwise. *See Laguna Hermosa*, 671 F.3d at 1288 (plaintiff must "elevate a claim for relief to the realm of plausibility" pursuant to RCFC 12(b)(6)). Moreover, particularly in the intellectual property context, this Court has held that, where a complaint suggests that "the government has done nothing to affirmatively proscribe plaintiffs' use of their property[,]" there can be no taking as a matter of law. *Energy Sec. of Am. Corp.*, 86 Fed. Cl. at 565 (holding that where "[p]laintiffs do not allege that DOE assumed title to the patents, took the right to exclude others from the patents, or infringed upon the right to sell or otherwise use the patents[,]" plaintiffs' complaint should be dismissed pursuant to RCFC 12(b)(6)); *cf. Huntleigh USA Corp. v. United States*, 75 Fed. Cl. 642, 646 (2007) (concluding after trial that "Huntleigh did not possess a compensable property interest under the Fifth Amendment, and the Court's analysis ends there[,]" as a matter of law), *aff'd*, 525 F.3d 1370, 1381 (Fed. Cir. 2008) (rejecting takings claim where "the government has not appropriated for its own use any property owned by Huntleigh"). Thus, for the very same reasons the Court holds that it likely lacks jurisdiction over Mr. Perry's takings claim, his Complaint must be dismissed, in any event, pursuant to RCFC 12(b)(6) for failing to state a takings claim, as a matter of law, upon which relief can be granted. *See Vane Minerals*, 116 Fed. Cl. at 62 ("The absence of a compensable property interest has been recognized as grounds for dismissal under RCFC 12(b)(1) and 12(b)(6)."). Although the Court remains unconvinced that Mr. Perry has met his burden to

demonstrate that his putative takings claim is within our Court's jurisdiction, the Court nevertheless concludes that dismissal pursuant to RCFC 12(b)(6) is warranted (and is the preferred approach, as implicitly articulated in the government's motion). *See also Carter*, 794 F.3d at 807; *Carr*, 591 F.3d at 917.

### D. Mr. Perry's Complaint Does Not Assert An Illegal Exaction Claim Within This Court's Jurisdiction Or Fails To State Such A Claim As A Matter Of Law Upon Which Relief Can Be Granted

Construed liberally, Mr. Perry's final attempt to invoke this Court's jurisdiction — which the government's pending motion to dismiss does not address — appears to be a claim for an illegal exaction. The government's omission, in the Court's view, is quite understandable given how confusing, duplicative, and voluminous the Court finds Mr. Perry's Complaint. Nevertheless, Mr. Perry alleges that "[t]he USPTO's assessment, acceptance, and retention of [patent application] fees was . . . not in accordance with law and also contrary to constitutional right, power, privilege, or immunity, and was inequitable." Compl. ¶ 327. Similar to Mr. Perry's takings claim, this Court *generally* has jurisdiction over "illegal exaction" claims. *See Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605-06 (1967) (describing illegal exaction claims as those alleging that "'the Government has the citizen's money in its pocket'" (quoting *Clapp v. United States*, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954))); *see also Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law.").[18]

Mr. Perry's broad allegations, however, necessarily implicate two subsidiary questions: (1) whether the USPTO's allegedly unlawful assessment or retention of certain fees may serve as the predicate for an illegal exaction claim within this Court's jurisdiction; and (2) whether Mr. Perry's Complaint contains sufficient *facts* to state a claim within this Court's jurisdiction, and upon which relief can be granted.

### 1. Illegal Exaction And Money-Mandating Claims Are Distinct Causes of Action

An illegal exaction claim generally involves money "improperly paid, exacted, or taken from the claimant[.]" *Eastport S.S. Corp.*, 372 F.2d at 1007. As noted above, the Federal Circuit's predecessor court — the appellate division of the United States Court of Claims — long ago characterized an illegal exaction as a situation in which "'the Government has the citizen's money in its pocket. . . .'" *Eastport S.S. Corp.*, 372 F.2d at 1008 (quoting *Clapp*, 117 F. Supp. at 580). In an illegal exaction case, in contrast to other actions for money damages, jurisdiction exists under the Tucker Act "even when the Constitutional provision allegedly violated does not contain compensation mandating language." *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 143-

---

[18] *See generally* Renée Burbank, *Illegal Exactions*, 87 Tenn. L. Rev. 315 (2020).

48 (2000) (citing *Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996), and holding "that this court has jurisdiction to consider whether the alleged violation of the regulations led to an illegal exaction violative of the Due Process Clause, despite the fact that clause does not contain compensation mandating language"), *aff'd*, 291 F.3d 1356, 1363 (Fed. Cir. 2002) ("Our cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim *unless* it constitutes an illegal exaction." (emphasis added) (citing *Murray v. United States,* 817 F.2d 1580, 1583 (Fed. Cir. 1987), *cert. denied,* 489 U.S. 1055 (1989), and *Inupiat Comy. of the Arctic Slope v. United States,* 230 Ct. Cl. 647, 662, *cert. denied,* 459 U.S. 969 (1982)).[19]  Put differently, an illegal exaction claim under the Tucker Act is "a non-tortious, non-contractual claim for money damages."  *Auto Club Ins. Ass'n v. United States*, 103 Fed. Cl. 268, 273-74 (2012).

Notwithstanding the illegal exaction claim's venerable pedigree, a wrinkle in the fabric of this Court's Tucker Act jurisdiction is increasingly apparent, with many decisions suggesting or even holding that an illegal exaction claim is not an independent cause of action, but rather must itself be premised upon a money-mandating provision of law.[20]  With regard to USPTO fees, in particular, at least one decision from this Court has held that we lack "jurisdiction to entertain . . . illegal exaction claim[s] related to official fees because the USPTO's notice statute and implementing regulation do not provide for the return of money unlawfully exacted." *eVideo Owners*, 126 Fed. Cl. at 105 (citing *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005), for the proposition that "a claimant must demonstrate that the statute or provision causing the exaction itself provides . . . that 'the remedy for its violation entails a return of money unlawfully exacted'" (additional citations omitted)).

Although the undersigned certainly concurs with the result in *eVideo Owners* — indeed, it was affirmed on appeal to the Federal Circuit[21] — the instant decision does not dismiss Mr. Perry's similar claims on such grounds, but rather addresses at greater length the nature of the illegal exaction claim, including:  (1) whether such a cause of action may provide a jurisdictional foothold for Mr. Perry's Complaint;  and (2) whether Mr. Perry's Complaint contains sufficient facts to support such an illegal exaction claim here, or whether it must be dismissed pursuant to RCFC 12(b)(1) and RCFC 12(b)(6).

---

[19] *See also Testan,* 424 U.S. at 401 (holding that a money-mandating provision of law is required "[w]here the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained").

[20] Burbank, 87 Tenn. L. Rev. at 345 (explaining that "[i]n the past decade, this framework is almost universal among the courts that categorize the claim at all[,]" but criticizing the approach as "ahistorical").

[21] *See eVideo Owners v. United States*, 680 F. App'x 1004, 1004 (Fed. Cir. 2017) (unpublished *per curiam* decision ordering "Appellants to show cause . . . why sanctions should not be imposed for a frivolous appeal" and declining to address any of the issues in the case).

In resolving whether this Court generally has jurisdiction to consider a claim that a government agency improperly or unlawfully collected or retained fees — *i.e.*, even in the absence of a money-mandating provision of law — this Court begins once again with the plain language of the Tucker Act:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either [1] upon the Constitution, or any Act of Congress or any regulation of an executive department, *or* [2] upon any express or implied contract with the United States, *or* [3] for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. 1491(a)(1) (emphasis added).

The first category — claims founded upon a constitutional, statutory, or regulatory provision — includes money-mandating claims, such as takings claims. *Maine Community Health Options* 140 S. Ct. at 1328. The second category, by its explicit terms, covers government contract claims (*i.e.*, express and implied-in-fact contracts, but not implied-in-law contracts). *Id.* at 1327 (citing 28 U.S.C. § 1491(a)(1)); *Hercules*, 516 U.S. at 423 ("[Tucker Act] jurisdiction [does not] extend[] . . . to claims on contracts implied in law[]"); *City of Cincinnati*, 153 F.3d at 1377. The remaining, third category — "liquidated or unliquidated damages in cases not sounding in tort" — would seem to include illegal exactions as an independent cause of action pursuant to the Tucker Act.[22] If that is not the case, "[t]his [latter] category is basically a null set in modern Tucker Act jurisdiction, which violates the statutory interpretation canon that every clause should have meaning."[23] Whether or not the Federal Circuit (or the Supreme Court) one day may agree explicitly with that proposed textual source for an illegal action Tucker Act

---

[22] *Auto Club,* 103 Fed. Cl. at 273 ("This language enables suit even in the absence of a money-mandating statute or an express or implied contract…." (discussing *Pan Am. World Airways, Inc. v. United States*, 122 F. Supp. 682, 683–84 (Ct. Cl. 1954)); Burbank, 87 Tenn. L. Rev. at 350 (arguing that "divorcing illegal exaction claims from requiring either a money-mandating statute or constitutional provision would also hew more closely to the natural reading of the Tucker Act waiver of sovereign immunity, which lists three categories of claims that can be brought against the United States").

[23] Burbank, 87 Tenn. L. Rev. at 349 (discussing the views of Judge Eric Bruggink in *A Modest Proposal*, 28 Pub. Cont. L.J. 529, 535 (1998)); Burbank, *id.* ("This requirement for a second, statutory money-mandating source of jurisdiction eviscerates illegal exactions as due process claims as a practical matter. Typically, if a statute is money-mandating, then its violation requires money damages as a remedy, without the need to frame the claim as an illegal exaction. But where no statutory language proscribes the government's conduct or implies a monetary damages claim, plaintiffs [would be] left with no effective means of claiming damages against the government.").

claim, the Federal Circuit repeatedly has distinguished between money-mandating and illegal exaction claims as distinct categories of Tucker Act causes of action.

For example, in *Ontario Power Generation, Inc. v. United States*, the Federal Circuit explained that "[t]he underlying monetary claims" under the Tucker Act "are of *three types*." 369 F.3d 1298, 1301 (Fed. Cir. 2004) (emphasis added) (citing *Testan*, 424 U.S. at 400 (1976)). In particular, *Ontario Power* identified the following three distinct types of monetary claims: (1) "claims alleging the existence of a contract between plaintiff and the government"; (2) "illegal exaction claims"; and (3) "claims where 'money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury.'" 369 F.3d at 1301 (quoting *Eastport S.S.*, 372 F.2d at 1007).

Similarly, in *Roth*, the Federal Circuit delineated between three types of Tucker Act claims, as follows:

> The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims. For actions [1] pursuant to contracts with the United States, actions to [2] recover illegal exactions of money by the United States, and actions [3] brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions, the Tucker Act waives the sovereign immunity of the United States.

378 F.3d at 1384; *see also Martinez*, 333 F.3d at 1302-03 ("The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims. The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, *actions to recover illegal exactions of money* by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." (emphasis added)); *Eastport S.S. Corp.*, 372 F.2d at 1007-08.

In *Aerolineas Argentinas v. United States*, the Federal Circuit could not have been more clear: "Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law." 77 F.3d 1564, 1572 (Fed. Cir. 1996); *id.* at 1573 (citing cases and holding that "[t]he Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power"). The Federal Circuit further explained that "[t]he amount exacted and paid may be recovered whether the money was paid directly to the government, or was paid to others at the direction of the government to meet a governmental obligation." *Id.* at 1573-74 ("Suit can be maintained under the Tucker Act for recovery of the money illegally required to be paid on behalf of the government."). After analyzing the statutes, regulations, and government-issued forms upon which plaintiff relied in that case, the Federal Circuit "conclude[d] that the Tucker Act

provides jurisdiction to recover the sums exacted illegally by the Service due to its misinterpretation or misapplication of statutes, regulations, or forms." *Id.* at 1578. More significantly, the Federal Circuit — not in dicta, but explicitly — held that "[i]n view of this ruling, we need not discuss *alternative theories of jurisdiction and recovery* offered by the airlines, including theories . . . [involving a] money-mandating statute[.]" *Id.* ("We do not decide whether jurisdiction could also be based on any other premise."). Thus, the Federal Circuit *already* has held that a money-mandating provision of law clearly is *not* a necessary prerequisite for an illegal exaction claim.

Senior Circuit Judge Nies' concurring decision in *Aerolineas Argentinas* helpfully provided a clear explanation of the difference between the "two forms" of a "Tucker Act claim for damages against the United States based upon a statute" — that is, "a claim under a money-mandating statute or a claim for money improperly exacted or retained." *Aerolineas Argentinas*, 77 F.3d at 1578-79 (Nies, J., concurring) (citing *Testan,* 424 U.S. at 401–402). According to Senior Judge Nies, "[a] claimant must rely either on a statute that mandates payment of money from the government to the claimant or on an illegal exaction, that is, a payment to the government by the claimant that is obtained without statutory authority." 77 F.3d at 1578-79 (citing *Clapp,* 117 F. Supp. at 576). While the first type of claim "is founded on statutory authorization[,]" the latter type is based upon "the absence of statutory authorization." *Id.* In short, "[o]ne is the flip side of the other." *Id.*

This view of Federal Circuit precedent — *i.e.*, that money-mandating and illegal exaction claims are distinct Tucker Act claim categories — aligns with the Supreme Court's decision in *Testan*, which impliedly recognized the distinction between those two types of claims. In *Testan*, the Supreme Court held that, "[w]here the United States is the defendant ***and the plaintiff is not suing for money improperly exacted or retained***, the basis of the federal claim whether it be the Constitution, a statute, or a regulation does not create a cause of action for money damages unless as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan*, 424 U.S. at 401–02 (emphasis added) (quoting *Eastport S.S. Corp.*, 372 F.2d, at 1008, 1009).[24] Thus, the Supreme Court recognized that this Court should only reach the question of whether a putative money-mandating provision "can fairly be interpreted as mandating compensation" where "the plaintiff is ***not*** suing for [an illegal exaction]." 424 U.S. at 401-02 (emphasis added). That language cannot be read except as delineating two different categories of claims.

---

[24] *See also Testan*, 424 U.S. at 400-401 ("The respondents do not rest their claims upon a contract; neither do they seek the return of money paid by them to the Government. It follows that the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting *Eastport S.S. Corp.*, 372 F.2d at 1009)).

Citing *Testan*, 424 U.S. at 401, the Federal Circuit's decision in *Casa de Cambio* affirmed the basic principle that an illegal exaction is its own, independent category of Tucker Act claim.  291 F.3d at 1363.  In *Casa de Cambio*, the issue of whether the plaintiff had invoked a money-mandating provision of law was squarely before the Court of Federal Claims.  48 Fed. Cl. at 140–41.  The Court of Federal Claims dismissed plaintiff's putative money-mandating claims "for lack of jurisdiction," concluding that "the relevant [regulatory] provisions do not provide for monetary relief if violations occur[.]"  *Id.*  On the other hand, the Court of Federal Claims dismissed plaintiff's illegal exaction claim for failure to state a claim, specifically concluding that "[i]n illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the Constitutional provision allegedly violated does not contain compensation mandating language."  *Id.* at 143–44.  On appeal, the Federal Circuit affirmed, but with nary a mention of the lack of money-mandating provision.  To the contrary, the Federal Circuit recognized that its "cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim *unless* it constitutes an illegal exaction."  *Casa de Cambio*, 291 F.3d at 1363 (emphasis added) (citing cases, including *Testan*).[25]

As noted above, however, decisions of this Court increasingly have blurred the clear, longstanding distinction between illegal exaction and money-mandating claims.  This (relatively) new line of authority appears to rely primarily upon the Federal Circuit's decision in *Norman*, 429 F.3d at 1095, for the proposition that "the Federal Circuit has indicated that even in the case of an illegal exaction, a claimant must satisfy the usual money-mandating requirement of the Tucker Act."  *Starr Int'l Co. v. United States*, 106 Fed. Cl. 50, 61 (2012), *vacated in part* 856 F.3d 953 (Fed. Cir. 2017); *see, e.g.*, *Starr Int'l Co., Inc. v. United States*, 856 F.3d at 978 (Wallach, J., concurring-in-part and concurring-in-the-result) (highlighting the "apparent inconsistencies in [the Federal Circuit's] application of the money-mandating requirement to illegal exaction claims" following *Norman*).[26]

---

[25] *But see* Burbank, 87 Tenn. L. Rev. at 349-352 (critiquing the "due process plus" theory of illegal exactions and instead persuasively arguing for a category of illegal exactions as "common law claims" that "fit within its own category of wrongdoing: a uniquely sovereign act that illegally disgorges property for the government's benefit").

[26]  *See also Boeing Co. v. United States*, 143 Fed. Cl. 298, 304 (2019) ("Discerning no conflict between *Norman* and *Aerolineas Argentinas*, the court concludes that Boeing also must show that 41 U.S.C. § 1503(b) is money-mandating to establish jurisdiction for its illegal exaction claim."); *eVideo Owners*, 126 Fed. Cl. at 105 (citing *Norman* for the proposition that "a claimant must demonstrate that the statute or provision causing the exaction itself provides ... that 'the remedy for its violation entails a return of money unlawfully exacted'" (additional citations omitted)); *Kipple v. United States*, 102 Fed. Cl. 773, 777 (2012) (discussing *Norman* with approval); *Elliott v. United States*, 96 Fed. Cl. 666, 669 (2011) (citing *Norman* for the proposition that "[t]he illegal exaction must be based on a statutory power"); *Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 86 Fed. Cl. 518, 529 n.23 (2009) (highlighting how *Norman* redefined what a plaintiff must

But there are good reasons to pause before adopting that language in *Norman* as authoritative.  First, *Norman* was decided by a three-judge panel; absent an *en banc* decision, however, the court remains bound by earlier precedent,[27] discussed at length above, distinguishing between illegal exaction and money-mandating claims.[28]  Second, the language in question from *Norman* is dicta, insofar as that case focused on a takings claim and the money-mandating issue was not essential to the decision.[29]  Third, and most significantly, the questionable language in *Norman* — upon which the government and decisions from this Court have relied to impose money-mandating requirements on illegal exaction claims — is derived from the Federal Circuit's decision in *Cyprus Amax Coal Co. v. United States.  See Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).  But, while *Cyprus Amax* merely used the phrase "unlawfully exacted," that case *held* that the U.S. Constitution's Export Clause, [30] "when fairly interpreted, affords an independent cause of action for monetary remedies."[31]  That is the language of money-mandating cases, and, in that regard, the

---

do to "invoke Tucker Act jurisdiction over an illegal exaction claim"), *aff'd in part, vacated in part*, 608 F.3d 1317 (Fed. Cir. 2010); *Powers v. United States*, 2015 WL 4931482, at *9 (Fed. Cl. Aug. 18, 2015) (citing *Norman* for the assertion that "[b]ecause the court has held that the debt collection statutes upon which plaintiff relies are not money-mandating, plaintiff has failed to state an illegal exaction claim upon which relief can be granted"); *but see Sin Hang Lee v. United States*, 142 Fed. Cl. 722, 727–28 (2019) (citing *Norman*, but explaining that "to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead [1] a money-mandating constitutional provision, statute, or regulation; [2] an express or implied contract with the United States; or [3] an illegal exaction of money by the United States").

[27] *In re Rudy*, 956 F.3d 1379, 1383 (Fed. Cir. 2020) ("'[P]rior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned [e]n banc.'" (quoting *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988)).

[28] Prior to *Norman*, the Federal Circuit required a plaintiff only to plead facts showing that "money ha[d] been improperly exacted or retained by the government[,]" and nothing more; there was no additional money-mandating requirement.  *Casa de Cambio*, 291 F.3d at 1364 (quoting *Testan*, 424 U.S. at 401)); *see* 291 F.3d at 1363 ("Our cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim *unless* it constitutes an illegal exaction."); *see also Aerolineas Argentinas*, 77 F.3d at 1578 (discussing plaintiff's illegal exaction claim and stressing that the Court "need not discuss alternative theories of jurisdiction and recovery offered by the airlines, including theories of . . . money-mandating statute[s]").

[29] *Norman*, 429 F.3d at 1096 ("Assuming *arguendo* that illegal exaction principles are ever applicable to actions against the United States for just compensation for an alleged taking of real property, we agree with the trial court that" the statute in question did not directly result in an exaction so as to satisfy the jurisdictional prerequisite for maintaining an illegal exaction claim).

[30] The Export Clause provides that "[n]o Tax or Duty shall be laid on Articles exported from any State."  U.S. Const. art. I, 9, cl. 5.

[31] 205 F.3d at 1373-74 ("We also hold that the cause of action based on the Export Clause is self-executing; that is, similar to the Compensation Clause, a party can recover for payment of taxes

Federal Circuit explicitly has recognized *Cyprus Amax* as an example of a money-mandating case, notwithstanding that the Export Clause also may serve as the basis for an illegal exaction claim.[32]

Indeed, the Federal Circuit has explained that the Export Clause is unique: "[u]nlike most substantive rights asserted under Tucker Act jurisdiction, the Export Clause may form the basis ***for both the second and third categories of claims***." *Ontario Power*, 369 F.3d 1298 at 1301-02 (emphasis added). Thus, *Cyprus Amax* itself cannot be read as defining the nature of illegal exaction claims, and *Ontario Power* explicitly held that the Export Clause may serve as the basis for two different types of Tucker Act causes of action:  money-mandating and illegal exaction claims.

Several more recent Federal Circuit decisions appear *not* to endorse the language from *Norman* that would impose money-mandating requirements on illegal exaction claims.  In *Lummi Tribe of the Lummi Reservation, Washington v. United States*, for example, an Indian tribe and three tribal housing entities brought suit under the Tucker Act and Indian Tucker Act, alleging that the government improperly deprived them of grant funds to which they were entitled pursuant to the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA").  870 F.3d 1313, 1314-15 (Fed. Cir. 2017).  This Court had held that while NAHASDA itself is money-mandating, "the failure to give a hearing under [the statutory scheme at issue] does not, on its own, support an illegal exaction claim."  *Id.* at 1317.  Because the money-mandating decision was dispositive as to jurisdiction, the government sought and obtained certification for interlocutory appeal, while the plaintiffs sought reconsideration of this Court's illegal exaction holding, which this Court had denied.  *Id.*

On appeal, the Federal Circuit reversed, holding that this Court "erred in finding NAHASDA to be money mandating."  *Id.* at 1319 ("Here, the underlying claim is not for presently due money damages.  It is for larger strings-attached NAHASDA grants—including subsequent supervision and adjustment—and, hence, for equitable relief.").  Under the more recent decisions, applying *Norman*'s money-mandating language to illegal exaction claims, the Federal Circuit's jurisdictional inquiry should have ended.  But, rather than call it quits with the money-mandating analysis, the appellate court continued on to reject explicitly the plaintiffs' alternative argument that "alleged procedural failures associated with HUD's grant decision resulted in a per se illegal

---

under the Export Clause independent of the tax refund statute.").

[32] *Ontario Power*, 369 F.3d at 1301-02 (discussing the "three types" of "underlying monetary claims" under the Tucker Act, and concluding that "[u]nlike most substantive rights asserted under Tucker Act jurisdiction, the Export Clause may form the basis for both the second and third categories of claims"); *id.* at 1302 (describing *Cyprus Amax* as holding that the "Export Clause is money-mandating"); *cf. White v. United States*, 2012 WL 252008, at *2 (Fed. Cl. Jan. 9, 2012) ("The Due Process Clause is money-mandating only when the theory of recovery is an illegal exaction.").

exaction, *independently conferring jurisdiction* on the Claims Court." *Lummi Tribe*, 870 F.3d at 1319 (emphasis added).

Notably, the Federal Circuit did not simply reject out-of-hand the notion that an illegal exaction claim may provide this Court with an independent basis for Tucker Act jurisdiction. Nor did the Federal Circuit pause to comment that the lack of a money-mandating provision foreclosed the possibility of an illegal exaction claim. Instead, the Federal Circuit held that "[a]n illegal exaction claim must be based on property taken from the claimant, not property left unawarded to the claimant, rendering the Tribes' exaction claim invalid on its face." *Id.* (rejecting plaintiffs' claims where plaintiffs "have not and cannot provide legal support for the notion that the failure to disburse property that was never in the claimant's possession or control constitutes an exaction").

Similarly, in *Virgin Islands Port Auth. v. United States*, Senior Judge Bruggink described the "two classes of non-contractual [Tucker Act] claims" and held that a "[p]laintiff need not point to a money-mandating provision" to support the existence of an illegal-exaction claim "because the necessary remedy to the government improperly using its authority to place a citizen's money in its pocket is a return of that sum." 136 Fed. Cl. 7, 13-14 (2018), *aff'd*, 922 F.3d 1328 (Fed. Cir. 2019); *see also* 136 Fed. Cl. at 14 ("We see no further obligation under . . . illegal exaction claims[] for a plaintiff to point to anything in the statute or regulation on which the government relies that anticipates an abuse of the statute and authorizes the plaintiff to sue for return of the monies."). Put differently still, "[t]he focus of an illegal exaction claim brought in this court is whether the United States government has the citizen's money in contravention of United States law." *Id.* at 16. In affirming that decision granting summary judgment, the Federal Circuit did not disagree with, or otherwise question, this Court's jurisdiction or Senior Judge Bruggink's characterization of illegal exaction claims. *See* 922 F.3d at 1333-34 (reaching merits of illegal exaction claim and concluding that the court "need not resolve the issue of whether Customs' collection constitutes an 'in effect' illegal exaction because this is a merits issue, not a jurisdictional one"). In reaching the merits, but without searching for a money-mandating provision of law, the Federal Circuit at least implicitly concluded that Senior Judge Bruggink's jurisdictional decision was correct.[33] *Id.*

---

[33] The government in its motion for summary judgment in *Virgin Islands Port Authority* specifically relied upon *Cyprus Amax Coal Co.*, arguing that "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must also demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" Def. Mot. for Summary Judgment (ECF No. 51) at 34, *Virgin Islands Port Authority v. United States*, 136 Fed. Cl. 7 (2018) (No. 13-390) (quoting *Cyprus Amax Coal Co.*, 205 F.3d at 1373); *see* Brief of Defendant-Appellee, Fed. Cir. No. 2018-1698, at 24, 29, 41 (discussing *Cyprus Amax* and citing *Norman*, 429 F.3d at 1095). Senior Judge Bruggink explicitly rejected that jurisdictional argument, and the Federal Circuit implicitly affirmed his conclusion, particularly given that the government briefed the

While it is true that "if the money-mandating requirement did not apply to illegal exaction claims, then any Government violation of a constitutional provision, statute, or regulation could result in a claim for money damages against the Government[,]"[34] the opposite possibility is equally troubling:[35] a government agency could compel — directly or in effect — a private party to pay a fee (or a fine), but the Tucker Act would provide no remedy for the return of such sum improperly collected, unless there also were a money-mandating provision that independently required the government to return the money. And, the possible availability of APA remedies elsewhere would not stop the government from arguing against jurisdiction everywhere. *See Lummi Tribe*, 870 F.3d at 1319 (expressing "severe misgivings about the incongruency of [the government's] stances in this and related litigation" where "it appears that the government has taken, essentially, the opposite position in at least one of our sister circuits in parallel litigation").

In light of the above discussion, the Court is convinced that "[a]n exaction claim provides an independent basis for jurisdiction and is a type of claim that the Tucker Act and the Little Tucker Act were designed to address." *Allegheny Techs. Inc. v. United States*, 144 Fed. Cl. 126, 136 (2019); *see Figueroa v. United States*, 57 Fed. Cl. 488, 499 (2003) ("In the context of an illegal exaction, the court has jurisdiction regardless of whether the provision relied upon can be reasonably construed to contain money-mandating language." (citing *Bowman*, 35 Fed. Cl. at 401)), *aff'd*, 466 F.3d 1023 (Fed. Cir. 2006), *cert. denied*, 550 U.S. 933 (2007).[36] As demonstrated above, several recent Federal Circuit

_____

issue on appeal.

[34] *Starr Int'l Co.*, 856 F.3d at 978 (Wallach, J., concurring-in-part and concurring-in-the-result).

[35] *N. California Power Agency v. United States*, 122 Fed. Cl. 111, 116 (2015) ("Even though [the statutory provision at issue] does not contain an express statement that the remedy for violating the statute's proportionality provision is a return of the money paid over to the Government, the lack of express money-mandating language in the statute does not defeat Plaintiffs' illegal exaction claim. . . . Otherwise, the Government could assess any fee or payment it wants from a plaintiff acting under the color of a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the Government, and the plaintiff would have no recourse for recouping the money overpaid. Overpayment claims are one of the quintessential illegal exaction claims . . . ." (citing cases, including *Norman*)).

[36] Whether the Tucker Act codifies a type of Federal common law claim, or simply a type of due process claim, *see* Burbank, 87 Tenn. L. Rev. at 349-352, this Court expresses no view. The Due Process Clause theory of illegal exaction claims appears, however, to be supported by the weight of the case law. *See Casa de Cambio*, 291 F.3d at 1363 ("Our cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim unless it constitutes an illegal exaction."); *Augusta v. United States*, No. 18-883C, 2018 WL 6721748, at *3 (Fed. Cl. Dec. 20, 2018) ("The Due Process Clause of the Fifth Amendment may only be a basis for our jurisdiction when a claim concerns an illegal exaction." (citing *Aerolineas Argentinas*, 77 F.3d at 1573)); *Hawkins v. United States*, No. 18-78L, 2018 WL 3214048, at *7 n.3 (Fed. Cl. June 29, 2018)

decisions either support, or are not inconsistent with the Court's view here.  *See, e.g.,* *Virgin Islands Port Auth.*, 922 F.3d at 1333-34; *Lummi Tribe*, 870 F.3d at 1319; *Ontario Power*, 369 F.3d 1298 at 1301-02; *see also Piszel v. United States*, 833 F.3d 1366, 1382 n.11 (Fed. Cir. 2016).[37]  In sum, there is no basis to engraft money-mandating requirements onto illegal exaction claims.[38]  Accordingly, unless and until the Federal Circuit

---

("The one exception is that our court does have jurisdiction over illegal exaction claims under the Due Process Clause of the Fifth Amendment. To make such a claim, the plaintiff would have to show that the government took the plaintiff's money and that this exaction violated due process." (citing *Aerolineas Argentinas*, 77 F.3d at 1572-73)), *aff'd* 748 F. App'x 325 (Fed. Cir. 2019); *cf. Arrowood Indemnity Co. v. United States*, -- Fed. Cl. --, 2020 WL 2510452, at *20 (May 15, 2020) ("When a party pleads the predicates for a takings claim or illegal-exaction claim, the court possesses jurisdiction to entertain such claims. . . . Those claims, at a basic level, are contentions that the government expropriated private property lawfully (takings) or unlawfully (illegal exaction). . . .If a party alleges the necessary predicates for these claims, the court is not deprived of jurisdiction even if the complaint . . . could support a tort claim.").

[37] In *Piszel*, the Court of Federal Claims dismissed a complaint where "there [was] no way to read the allegations in the complaint to state a plausible illegal exaction claim." *Piszel v. United States*, 121 Fed. Cl. 793, 802 (2015), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016).  Thus, the trial court granted the government's motion to dismiss the complaint for "failure to state a claim" pursuant to RCFC 12(b)(6), and the Federal Circuit affirmed, similarly reasoning that "Mr. Piszel's complaint fails to state a claim on which relief can be granted."  833 F.3d at 1369; *see id.* at 1372 ("noting that "[t]he government moved to dismiss under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims").  The Federal Circuit explained that "there was no exaction here because there was no payment."  833 F.3d at 1382.  Notably, however, the Federal Circuit pointed out that the plaintiff, for the first time, on appeal, argued that the primary statute at issue – the Housing and Economic Recovery Act (HERA) – was money-mandating.  *Id.* at n.11.  While the plaintiff "failed to plead such a claim," and the appellate court concluded that "there [was] no basis for such an assertion," the Federal Circuit never suggested that it or the Court of Federal Claims somehow lacked jurisdiction over the illegal exaction claim that was at issue.

[38] *Usibelli Coal Mine v. United States*, 54 Fed. Cl. 373, 379 (2002) ("First, it is apparent that the Federal Circuit viewed the Export Clause as a money-mandating provision that authorized the award of money damages, thereby allowing a claimant to file an action based directly on that clause.  Second, relatedly, the court viewed such a damages action as distinct from a tax refund suit, and thus divorced from the illegal exaction doctrine described in *Eastport*.  That the court's opinion, on several occasions, referred to the Coal Tax as an 'illegal exaction' does not suggest otherwise.  *Per contra.*  The overall methodology employed by the court, liberally spiced with references to *Testan*, [] and *Mitchell*, [] manifestly is that typically employed in identifying money-mandating provisions in the law."), *rev'd on other grounds*, 311 F. App'x 350 (Fed. Cir. 2008); *see also Lion Raisins*, 54 Fed. Cl. at 376 (noting that "a tax refund suit" – a classic illegal exaction type claim – "does not involve a demand for damages based on the existence of some money-mandating statute or Constitutional provision").

definitively resolves this issue in a contrary manner,[39] the undersigned is of the view that a plaintiff need not identify a money-mandating provision of law to invoke this Court's jurisdiction for an illegal exaction claim.

### 2. Mr. Perry's Complaint Does Not Contain Sufficient Facts To State An Illegal Exaction Claim Within This Court's Jurisdiction Or Fails To State A Claim As A Matter Of Law Upon Which Relief Can Be Granted

In light of the above discussion, the Tucker Act's illegal exaction claim category covers the general thrust of Mr. Perry's Complaint here.  Thus, the Court easily can imagine a case in which a government agency, such as the USPTO, improperly charges, or overcharges, a party for the agency's services or for a party's participation in a government program — or any other innumerable similar scenarios — but then, for whatever reason, declines to issue a refund.[40]  Unlike a takings claim, where a plaintiff must concede the validity or legality of an agency's action, an illegal exaction claim typically is premised, in contrast, upon "the absence of statutory authorization." *Aerolineas Argentinas*, 77 F.3d at 1578-79; *see Reid*, 2020 WL 2764753, at *19 ("When the government expropriates property, a plaintiff can obtain relief under either a takings theory or an illegal-exaction theory, . . . but not both. . .The winning claim depends on the facts established; a takings claim requires lawful conduct, while an illegal-exaction claim is premised on unauthorized conduct." (internal citations omitted)).[41]

---

[39] *See Starr Int'l Co.*, 856 F.3d at 978 (Wallach, J., concurring-in-part and concurring-in-the-result) (explaining his view "that a party bringing an illegal exaction claim must identify a separate money-mandating source of substantive law entitling it to compensation," that "the weight of our illegal exaction case law supports this conclusion[,]" and that "[i]t is regrettable that the majority chooses to bypass this opportunity to clarify the law for future cases").

[40] *Auto Club Ins. Ass'n*, 103 Fed. at 273 ("[Plaintiff] is correct that the Tucker Act encompasses a claim of illegal exaction (a non-tortious, non-contractual claim for money damages)").

[41] *Fairholme Funds, Inc. v. United States*, 147 Fed. Cl. 1, 40 (2019) ("When a party pleads the predicates for a takings claim or illegal-exaction claim, the court possesses jurisdiction to entertain such claims. . . . Those claims, at a basic level, are contentions that the government expropriated private property lawfully (takings) or unlawfully (illegal exaction)."), *motion to certify appeal granted,* 147 Fed. Cl. 126 (2020); *Orient Overseas Container Line (UK) Ltd. v. United States*, 48 Fed. Cl. 284, 289 (2000) ("Takings claims arise because of a deprivation of property that is authorized by law. Illegal exactions arise when the government requires payment in violation of the Constitution, a statute, or a regulation."); *Mallow v. United States,* 161 Ct. Cl. 446, 450  (1963) (Tucker Act provided jurisdiction in the Court of Claims for recovery of money that the government illegally collected from the plaintiff as fines under void convictions and sentences); *Suwannee S.S. Co. v. United States,* 150 Ct. Cl. 331, 335–36 (1960) (ship owner may recover payment illegally exacted as a condition of receiving permission to sell ship to a foreign purchaser); *Seatrade Corp. v. United States*, 152 Ct. Cl. 356, 360 (1961) (same); *Eversharp, Inc. v. United States*, 125 F. Supp. 244, 246–47 (Ct. Cl. 1954) (finding jurisdiction and explaining "that, if the plaintiff is right in its interpretation of the Renegotiation Act, and that Act does contemplate the collection of interest at a reasonable rate, and six percent interest is unreasonable, the

Although this "Court should hesitate before ruling that it lacks subject-matter jurisdiction over a claim of illegal exaction[,]" *Fireman v. United States*, 44 Fed. Cl. 528, 535 (1999), Mr. Perry's Complaint, at a minimum, must contain the requisite *factual* allegations necessary to support such a claim. *Harris* 2014 WL 10936253, at *1 n.4 (dismissing plaintiff's illegal exaction claim because "ambiguous statements [in the complaint] regarding the presence of an illegal exaction" did not suffice to establish this Court's subject-matter jurisdiction); *see Crow Creek Sioux Tribe*, 900 F.3d at 1354–55 ("'To survive a motion to dismiss . . . a complaint must contain sufficient factual matter' that would plausibly establish . . . [jurisdiction, and] "'[t]hreadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)). Here, the complete lack of any *factual* allegations contained in Mr. Perry's Complaint to support an illegal exaction claim precludes this Court from exercising subject-matter jurisdiction.

The Federal Circuit's decision in *Aerolineas Argentinas*, for example, illustrates the sort of allegations a complaint must contain for this Court to possess jurisdiction over an illegal exaction claim. In that case, the Federal Circuit held that the Court of Federal Claims improperly dismissed plaintiff's illegal exaction claim, noting that the airline had pleaded sufficient facts to support jurisdiction. 77 F.3d at 1578. Indeed, the court highlighted that the airline's complaint laid out specific factual assertions that were necessary to support an illegal exaction claim within this Court's Tucker Act jurisdiction. *Id.* ("The Service improperly required the airlines to take custody, pending processing and decision of asylum petitions, of aliens who were in 'stowaway' status because they destroyed or concealed their travel documents."). The Federal Circuit further emphasized that the airline's complaint pointed to specific legal bases for the alleged illegal exaction. 77 F.3d at 1578 (explaining that plaintiff specifically alleged that the government "misappli[ed] [] 8 C.F.R. § 235.3(d) to impose on the airlines the cost of long-term detention of excludable aliens, after repeal of INA § 233").

In the absence of factual allegations of *any* specificity regarding the USPTO's collection or handling of Mr. Perry's funds, his Complaint may be dismissed for lack of jurisdiction. *Harris* 2014 WL 10936253, at *1 n.4 ("Notwithstanding plaintiff's ambiguous statements regarding the presence of an illegal exaction claim in the complaint, the court must agree with defendant that there is no nonfrivolous illegal exaction claim in this suit."). Mr. Perry's Complaint with regard to his putative illegal exaction claim is "[a]mbiguous" at best, as he does not point to a particular basis to

---

plaintiff's claim is founded upon the misinterpretation and misapplication of an Act of Congress."); *Pan American World Airways v. United States*, 129 Ct. Cl. 53, 55 (1954) ("the collection of money by Government officials, pursuant to an invalid regulation" is an illegal exaction and not a tort); *see also Carriso v. United States*, 106 F.2d 707, 712 (9th Cir. 1939) (when a government agent construes a statute as remaining in effect after it has been repealed and uses it as a basis to collect fees, a claim to recover the fees is "founded upon a law of Congress" and "does not sound in tort").

support the conclusory assertion that the USPTO exacted, or is holding, his money in violation of law.  *Id.*; *see* Compl. ¶ 112 ("the USPTO is intentionally doing illegal things and covering up facts with more illegal practices").  As such, the Court doubts Mr. Perry's Complaint meets the pleading standards to vest this Court with jurisdiction over his putative illegal exaction claim.

Nevertheless, as explained *supra*, the preferred approach is to dismiss the claim on the merits (*i.e.*, pursuant to RCFC 12(b)(6)).  *See Carter*, 794 F.3d at 807; *Carr*, 591 F.3d at 917; *see also Fireman*, 44 Fed. Cl. at 535 ("[This] Court should hesitate before ruling that it lacks subject matter jurisdiction over a claim of illegal exaction");[42] *XP Vehicles*, 121 Fed. Cl. at 779 ("A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief.").

To assert a valid illegal exaction claim that will survive a motion to dismiss pursuant to RCFC 12(b)(6), a plaintiff's complaint "must show that:  (1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation."  *Piszel* 121 Fed. Cl. at 801.  Mr. Perry's illegal exaction claim, however, does not meet that standard.

For example, in *Piszel*, the Court of Federal Claims held that "[b]ecause plaintiff cannot show that he has paid any money to the government directly or 'in effect,' he fails to state a plausible illegal exaction claim in the complaint" and dismissal under 12(b)(6) was warranted.  121 Fed. Cl. at 802.  In affirming that decision, the Federal Circuit explained that because "no facts as alleged in the complaint concern the payment of money by [plaintiff]. . . [the] illegal exaction claim must also fail."  *Piszel*, 833 F.3d at 1382.  Nevertheless, the Federal Circuit emphasized that for a plaintiff to properly plead an illegal exaction claim he or she must seek "'recovery of monies that the government has required to be paid *contrary to law.*'"  *Id.* (quoting *Aerolineas Argentinas*, 77 F.3d at 1572) (emphasis added).  In other words, a plaintiff cannot allege merely that he or she paid money to the government; rather, a plaintiff also must assert sufficient facts to demonstrate that such payment was made pursuant to a requirement that is "contrary to law[.]"  *Id.*; *cf. Virgin Islands Port Auth.* 922 F.3d at 1337 (holding that "a mere claim of right is not coercive" and that plaintiff had failed to adequately allege an illegal exaction claim where plaintiff showed "neither a prohibition nor coercive government action[]").

---

[42] That is true particularly, where, as here, Mr. Perry is a *pro se* plaintiff.  *See, e.g., Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (noting that "as a general rule . . . when . . . [a] party is appearing pro se" courts should reach the merits); *cf. Armstrong v. Office of Pers. Mgmt.*, 314 F. App'x 269, 271 (Fed. Cir. 2008) (noting that the court will "construe [*pro se* plaintiff's] pleadings liberally . . .  and reach the merits of her case[]"); *Gunn v. U.S. Postal Serv.*, 25 F. App'x 895, 896 (Fed. Cir. 2001) ("[T]he court extends that leniency to reach the merits of Gunn's *pro se* appeal.").

Similarly, in *Aerolineas Argentinas,* recall that the Federal Circuit explained that the plaintiffs had established jurisdiction in the Court of Federal Claims when they pleaded "a claim for the recovery of monies that they assert were illegally exacted." 77 F.3d at 1573–74. The court examined whether the regulation upon which the government relied had been "misinterpreted, misapplied, or [was] invalid." *Id.* In so doing, the Federal Circuit noted "[i]f the [plaintiffs] fail to establish that the exaction was contrary to law, that failure does not deprive the court of jurisdiction, but serves as an adjudication on the merits." *Id.* at 1574. Here, there is no allegation — factual or otherwise — demonstrating *how* or *why* Mr. Perry's alleged payment to the USPTO "was contrary to law." *Id.* Thus, even where "jurisdiction has been established," this Court must nonetheless dismiss the complaint where it "does not assert a set of facts which if proven would support the claim." 77 F.3d at 1572 (citing *Bell*, 327 U.S. at 682). In such a case — that is, when a plaintiff's complaint fails to plead sufficient facts to support his or her purported illegal exaction claim — any "dismissal is deemed an adjudication on the merits." 77 F.3d at 1572 (citing *Bell*, 327 U.S. at 682).

These cases stand for the proposition that — just as the Court indicated with regard to the pleading requirements for contracts and takings claims — mere conclusory legal characterizations or recitations of claim elements do not suffice to state an illegal exaction claim upon which relief can be granted. *See Laguna Hermosa*, 671 F.3d at 1288 (plaintiff must "elevate a claim for relief to the realm of plausibility" pursuant to RCFC 12(b)(6)). The Court thus finds that Mr. Perry's bare assertion that the USPTO's fee assessments were illegal (or otherwise improper) constitutes a conclusory legal characterization, unsupported by any *factual* averments, which, if true, would show why the fees he was required to pay were improperly assessed or retained by the USPTO. *See Bradley*, 136 F.3d 1322 ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

Thus, even assuming that this Court has jurisdiction to consider Mr. Perry's illegal exaction claim, because his Complaint contains no factual allegations demonstrating any sum improperly exacted or retained, he has failed to state an illegal exaction claim as a matter of law. Accordingly, Mr. Perry's claims — to the extent they relate to USPTO fees alleged to have been improperly collected or retained — are dismissed pursuant to RCFC 12(b)(1) or, in the alternative, pursuant to RCFC 12(b)(6).[43]

---

[43] As noted, Mr. Perry is a *pro se* litigant, and thus, as stated *supra*, his complaint is entitled to a liberal construction. Nevertheless, even after multiple reviews of his lengthy Complaint, the Court cannot identify specific factual allegations supporting his illegal exaction claim. To the extent that any such facts *are* present in the Complaint, the Court emphasizes that, despite Mr. Perry's *pro se* status, his "[a]rguments . . . are not fleshed out" and thus "are not preserved." *Stephanatos v. United States*, 306 F. App'x 560, 564 (Fed. Cir. 2009) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006), and *Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1250 n.2 (Fed. Cir. 2008), in support of the proposition that because

### V.    Mr. Perry's Remaining Claims Are Frivolous

Finally, Mr. Perry alleges that representatives from the USPTO broke into his email account and deleted various emails that he previously had received from the agency.  *See, e.g.*, Pl. Resp. ¶ 2.  In turn, he attempted to file — on several occasions — a request that this Court issue both an injunction and a restraining order against the USPTO.  *See* ECF No. 15 (permitting filing of plaintiff's request for injunctive relief); ECF No. 16 (plaintiff's opposition, including request for injunctive relief); ECF No. 17 (plaintiff's separate request for a preliminary injunction and a restraining order); ECF No. 22 (order rejecting an additional nine attempted filings).  Such claims must be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1), and because they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

First, as the Court highlighted above and as the government correctly contends, equitable relief is a remedy which this Court ordinarily may not grant, absent limited circumstances not present in this case.  *See* 28 U.S.C. § 1491(b)(2) (authorizing "remand[s]" of "appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just" where such relief is "incident of and collateral to" a money judgment); *Ute Indian Tribe of Uintah and Ouray Indian Reservation v. United States*, 145 Fed. Cl. 609, 632 n.17 (2019) (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998), for the proposition that "the Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is 'tied and subordinate to a money judgment'").  In this case, Mr. Perry pleads no facts, which, if proven, would entitle him to a money judgment, let alone to some sort of equitable relief.

Second, the Court concludes that Mr. Perry's claims related to his email account should be dismissed because they are patently frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B)(i) (instructing that a court "shall dismiss" an *in forma pauperis* ("IFP") proceeding "if the court determines that . . . the action . . . is frivolous"); *see also McCullough v. United States*, 76 Fed. Cl. 1, 3 (2006) (holding that pursuant to 28 U.S.C. § 1915(e)(2), once an IFP plaintiff's claims are found to be frivolous, "the court shall dismiss the case"); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("frivolousness is a decision entrusted to the discretion of the court"); *Taylor v. United States*, 568 F. App'x 890, 891 (Fed. Cir. 2014) (summarily affirming Court of Federal Claims' dismissal of frivolous complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and holding that a trial court "is required to dismiss a frivolous complaint from a litigant who is proceeding *in forma pauperis*"); *Pikulin v. United States*, 425 F. App'x 902, 903 (Fed. Cir. 2011) (affirming dismissal of plaintiff's complaint as frivolous, as it "provide[d] no basis for jurisdiction in the Court of Federal Claims").

---

"plaintiff does not expressly use the term 'illegal exaction' or 'wrongful exaction' throughout [the] instant complaint, it [cannot] be construed as if the terms [were] being used throughout th[e] complaint").  To the extent that Mr. Perry asserted an illegal exaction claim, he fails to state such a claim as a matter of law upon which relief can be granted.

Although this Court may not dismiss an IFP complaint merely because plaintiff's allegations are "unlikely," this court *must* dismiss a claim as frivolous if the alleged facts present "fantastic" or "delusional" scenarios. *Taylor*, 568 F. App'x at 891 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *see Denton*, 504 U.S. at 33 (emphasizing that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"). A "tale of . . . intrigue" — like parts of Mr. Perry's Complaint — may be deemed frivolous where "the factual allegations asserted are so unbelievable that there is no need for an evidentiary hearing to determine their veracity." *Taylor*, 568 F. App'x at 891. Accordingly, Mr. Perry's request for injunctive relief is denied, and his claim for relief is dismissed.[44]

CONCLUSION

The government's motion to dismiss Mr. Perry's Complaint is **GRANTED**, and the same hereby is **DISMISSED** for lack of jurisdiction and for failure to state a claim, pursuant to RCFC 12(b)(1) and 12(b)(6), respectively. To the extent Mr. Perry properly has filed any pending motions or other requests, they are denied as moot. Furthermore, given the duplicative and frivolous filings Mr. Perry has attempted in this case, the Court directs the Clerk's office to reject any of Mr. Perry's further submissions in this action, unless such filings comply with this Court's rules regarding post-dismissal submissions.[45]

---

[44] This Court is compelled to note that Mr. Perry's repeated attempts to file duplicative, meritless motions borders on abuse of process. *United States v. Nesglo, Inc.*, 744 F.2d 887, 892 (1st Cir. 1984) (noting that a "frivolous appeal of a sanction for bringing frivolous litigation borders on abuse of process"). In that regard, 28 U.S.C. § 1915(e)(2) is a "tool[ ] that [is] available in extreme cases to protect public officials from undue harassment . . . ." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). This Court will not permit the "squander[ing] [of] the resources of the court or defendant with frivolous litigation[.]" *Chandler v. United States*, 31 Fed. Cl. 106, 111 (1994). Moreover, "'[i]t is vital that the right to file *in forma pauperis* not be incumbered by those who would abuse the integrity of our process by frivolous filings.'" *Zatko v. California*, 502 U.S. 16, 18 (1991) (per curiam) (quoting *In re Amendment to Rule 39*, 500 U.S. 13, 13 (1991) (internal quotation marks omitted)).

[45] The Federal Circuit has suggested that a finding of frivolousness may support such a directive to the Clerk of Court. *See Constant v. United States*, 929 F.2d 654, 659 (Fed. Cir. 1991) (remarking, in light of the plaintiff's prior frivolous filings, that "we cannot assume that papers he may hereafter file in this court will be well-founded and presented in good faith[,]" and thus ordering the clerk "henceforth to accept for filing no . . . fileable paper from [plaintiff] without an order of the court approving the filing"); *Winsett v. MacDonald*, 611 F. App'x 710, 714 (Fed. Cir. 2015) (applying 28 U.S.C. § 1915(e)(2), and noting that, in light of the plaintiff's "repetitive filings at this court and [in other] tribunals, we advise that any additional applications to proceed *in forma pauperis* should be subject to additional scrutiny"). Indeed, this is not the first time a court appears to have expressed serious criticism of Mr. Perry's frivolous litigation habits. *See In re Perry*, 2017 WL 1276075, at *2 (C.D. Cal. Mar. 31, 2017) (noting that he "was

The Clerk is directed to enter judgment accordingly.

It is so **ORDERED**.

*Matthew H. Solomson*

Matthew H. Solomson
Judge

---

found to be a vexatious litigant by the state courts, [and that] he was required to post a bond before initiating any state court action"), *aff'd*, 734 F. App'x 533, 535 (9th Cir. 2018) (denying "Perry's requests that this court review prior orders of the bankruptcy court, order disqualification of the bankruptcy judge, sanction appellees' attorneys, reinstate federal claims, [and] enter judgment in Perry's favor"), *cert. denied sub nom. Perry v. JPMorgan Chase Bank, N.A.*, 140 S. Ct. 629, 205 L. Ed. 2d 392 (2019); *see also In re Perry*, 2013 WL 3369310, at *4 (B.A.P. 9th Cir. July 2, 2013) (noting that a "motions panel of the Ninth Circuit denied Mr. Perry's motion" to proceed *in forma pauperis* "because . . . the appeal is frivolous"), *aff'd*, 586 F. App'x 283 (9th Cir. 2014).  Accordingly, this directive is warranted in light of Mr. Perry's prior-dismissed filings. *Pikulin*, 425 F. App'x at 903 (highlighting that plaintiff "had filed five related suits in the Court of Federal Claims, as well as numerous suits in the United States District Courts for the Southern and Eastern Districts of New York[,]" in affirming the Court of Federal Claims' dismissal of plaintiff's complaint based on a finding of frivolousness).